Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant, *v.* Earl I. and Mildred W. Starr, James E. Hylton, t/a Valley View Bottling Works, Appellee.

Commonwealth of Pennsylvania, Pennsylvania Liquor Control Board, Appellant, *v.* William T. Lewis, II, t/a Nelson Beer Distributors, Appellee.

416

Argued December 3, 1973, before Judges Crumlish, Jr., Kramer, Wilkinson, Jr., Mencer, Rogers and Blatt. President Judge Bowman did not participate.

*Albert B. Miller,* Special Assistant Attorney General, with him *Alexander J. Jaffurs,* Assistant Attorney General, and *Israel Packel,* Attorney General, for appellant.

*George G. Lindsay,* with him *Bashore and Lindsay,* for appellee.

*Robert E. Woodside,* with him *Shearer, Mette, Hoerner & Woodside,* for amicus curiae, Pennsylvania Importing Masters Distributors' Association.

*Lawrence Sager,* for amicus curiae, United Steelworkers of America.

OPINION BY JUDGE BLATT, April 22, 1974:

This appeal concerns the interpretation and application of Section 431(b) of the Liquor Code, Act of April 12, 1951, P. L. 90, *as amended,* 47 P.S. §4-431(b). This section provides as follows: "Each out of State manufacturer of malt or brewed beverages whose products are sold and delivered in this Commonwealth shall give distributing rights for such products in designated geographical areas to specific importing distributors, and such importing distributor shall not sell or deliver malt or brewed beverages manufactured by the out of state manufacturer to any person issued a license under the provisions of this act whose licensed premises are not located within the geographical area for which he has been given distributing rights by such manufacturer: Provided, That the importing distributor holding such distributing rights for such product shall not sell or deliver the same to another importing distributor without first having entered into *a written agreement with the said secondary importing distributor setting forth the terms and conditions under which such products are to be resold within the territory granted to the primary importing distributor by the manufacturer.*" (Emphasis added.) Section 441(e) of the Liquor Code, 47 P.S. §4-441(e) further provides: "(e) No distributor or importing distributor shall purchase, sell, resell, receive or deliver any malt or brewed beverages, except in strict compliance with the provisions of subsection (b) of section 431 of this act."

The essential facts in this consolidated appeal are undisputed. The appellee, William T. Lewis, II, trading as Nelson Beer Distributor (Nelson), was licensed by the Pennsylvania Liquor Control Board (Board) as an importing distributor.[1] He bought his malt or brewed beverages from licensed primary importing distributors who were supplied by out-of-state manufacturers; thus, Nelson was a secondary importing distributor and in his resales was clearly governed by the above cited sections. The Board found, however, that Nelson had sold and/or delivered malt or brewed beverages to Dauphin County licensees, although this County was not in the area assigned to the primary importing distributor by the manufacturers. Nelson was fined $100, in a summary proceeding, pursuant to Section 494 of the Liquor Code, 47 P.S. §4-494, but the Schuylkill County Court of Common Pleas vacated judgment, asserting that the Liquor Code provisions were not violated.

The Board has appealed to this Court, contending that the statute prohibits a secondary importing distributor from selling malt or brewed beverages anywhere but in the "designated geographical areas" which have been assigned by the manufacturer to the primary importing distributor for the particular prod-

[1] " 'Importing distributor' shall mean any person licensed by the board to engage in the purchase from manufacturers and other persons located outside this Commonwealth and from persons licensed as manufacturers of malt or brewed beverages and importing distributors under this act, and the resale of malt or brewed beverages in the original sealed containers as prepared for the market by the manufacturer at the place of manufacture, but not for consumption on the premises where sold, and in quantities of not less than a case of twenty-four containers, each container holding seven fluid ounces or more, or a case of twelve containers, each container holding twenty-four fluid ounces or more, except original containers containing one hundred twenty-eight ounces or more which may be sold separately." Section 102 of the Liquor Code, 47 P.S. §4-102.

ucts of the manufacturer. The appellee argues, however, that the statute merely requires that the primary importing distributor may impose terms and conditions in a written agreement upon the secondary importing distributor only when the products are sold within the primary's designated geographical area. The statute, it is claimed, does not prohibit or restrict resales by the secondary outside the limited area of the primary. The secondary contends, as the appellee here, therefore, that the primary could have imposed restrictions on him within the designated geographical area but that he was free to resell without restriction in Dauphin County which, in this case, was outside the primary's designated area.

We must disagree with the appellee's contention and hold, with the Board, that the statute must be interpreted to restrict the secondary importing distributor to the designated geographical area assigned to the primary importing distributor.

The regulation of the liquor industry has been expressly reserved to the states by the Twenty-First Amendment of the United States Constitution. In any interpretation of the Liquor Code we must note, therefore, that the control of the sale and use of alcoholic beverages is absolutely within the police powers of the Commonwealth and that the *privilege*[2] of obtaining a liquor license is subject to the requirements of the Legislature. *Tahiti Bar, Inc. Liquor License Case,* 395 Pa. 355, 150 A. 2d 112 (1959), *appeal dismissed,* 361 U.S. 85 (1959); *Spankard's Liquor License Case,* 138 Pa. Superior Ct. 251, 10 A. 2d 899 (1939). Contrary to the

---

[2] For the appellee's benefit we note that our Supreme Court in *Feitz Estate,* 402 Pa. 437, 167 A. 2d 504 (1961), stated that the right to apply for transfer of a decedent's liquor license is a right which possesses value but distinguished that right to apply from the license itself, which was regarded as a privilege.

belief of the appellee, the state's regulatory authority is so pervasive that a liquor license may even be taken away by the governing authority without compensation to the holder. *See Spankard, supra.*

The purpose of liquor control legislation in Pennsylvania, moreover, has been to regulate and restrain the sales of liquor, not to promote them. *Bethel Township Veterans Home Assn. Liquor License Case,* 180 Pa. Superior Ct. 159, 119 A. 2d 613 (1956). The Legislature has determined that every section of the Liquor Code is to be construed liberally "for the protection of the public welfare, health, peace and morals of the people of the Commonwealth" and in light of that policy it has been decided that all transactions in liquor, alcohol and malt or brewed beverages which take place in the Commonwealth are prohibited except as otherwise expressly authorized. Section 104(a) and (c) of the Liquor Code, 47 P.S. §1-104(a) and (c).

With these general principles in mind, as well as the guidance of Section 1921(a) and (b) of the Statutory Construction Act of 1972, Act of December 6, 1972, P. L. , No. 290, 1 Pa.S. §1921 (which instructs us to effectuate the intent of the Legislature as well as the clear meaning of the words), we must reverse the decision of the lower court, which held against the Board. Reading the statute in a way which would prohibit a primary from distributing a product in Dauphin County but which would allow a secondary to resell that *same* product in Dauphin County would make the control meaningless and thus be an absurd interpretation contrary to Section 1922 of the Statutory Construction Act, 1 Pa.S. §1922(1).

The Legislature having seen fit to regulate the distribution of malt and brewed beverages, by limiting the scope of such distribution to specific areas designated by the manufacturer, has thereby provided an easily traceable transaction readily susceptible to observation

and control. The statute must be read so as to preserve this supervisory scheme.

Although we recognize that this interpretation may be economically detrimental to some distributors and to some consumers, the Legislature has determined its policy of controlling the sale and use of malt and brewed beverages to be for the benefit of the health, safety, morals and welfare of the public, and it is, therefore, controlling. In addition, the statute must be read to favor the public interest rather than any private interests. *See also* Section 1922 of the Statutory Construction Act, 1 Pa.S. §1922(5).

We, therefore, reverse the lower court and reinstate the Liquor Control Board in its finding that a violation of the Liquor Code was committed.