## Smart, Inc. v. Liquor Control Board

*Richard F. Stevens,* for appellant.
*Mark N. Cohen,* contra.

KOCH, *P. J.,* November 19, 1974—Smart, Inc. is the licensee and holder of a hotel liquor license (no. H-2002) and amusement permit (no. AP-980) and conducts its business in the Village of Schnecksville, Lehigh County. Pursuant to a hearing on February 22, 1974, the Pennsylvania Liquor Control Board imposed a fine of $150 upon the corporation for violation of a board regulation. The regulation in question is set forth in 40 Pa. Code, §5.32(a), and further designated as regulation 110.02(A):

"No licensee shall use or permit to be used inside or outside of the licensed premises a loudspeaker or similar device whereby the sound of music or other entertainment, or the advertisement thereof, can be heard on the outside of the licensed premises."

At the conclusion of the de novo hearing before the court, counsel for appellant requested that the appeal be sustained on two grounds: (1) That the regulation is constitutionally defective and, (2) that

the testimony offered by the board failed to establish by the preponderance of the evidence that the agents of the licensee violated the regulation. These two issues were argued and the matter is now before us for disposition.

Appellant concedes that the Commonwealth in enacting legislation controlling the sale and use of alcoholic beverages validly exercised its police powers. As recently as Pennsylvania Liquor Control Board v. Valley View Bottling Works, 13 Pa. Commonwealth Ct. 415 (1974), it was held as follows:

"In any interpretation of the Liquor Code, we must note, therefore, that the control of the sale and use of alcoholic beverages is absolutely within the police powers of the Commonwealth and that the privilege of obtaining a liquor license is subject to the requirements of the Legislature."

In Tahiti Bar, Inc. Liquor License Case, 395 Pa. 355, the court stated:

"There is perhaps no other area of permissible state action within which the exercise of the police power of a state is more plenary than in the regulation and control of the use and sale of alcoholic beverages. See: Goesaert v. Cleary, 335 U.S. 464, 465, 69 S. Ct. 198. Bearing in mind the 'alleged noxious qualities and extra-ordinary evils' traditionally assigned to the use of alcoholic beverages, it is no longer open to question that a state may prohibit the manufacture, gift, purchase, sale, possession or transportation of alcoholic beverages within its borders. This power of prohibition includes the lesser power of regulation, and a state

may adopt such measures as are reasonably appropriate or needful to render the exercise of that power effective. See: Crane v. Campbell, 245 U.S. 304, 38 S. Ct. 98 (and cases therein cited); State Board of Equalization of California et al. v. Young's Market Co. et al., 299 U.S. 59, 63, 57 S. Ct. 77; Ziffrin v. Reeves, 308 U.S. 132, 138, 60 S. Ct. 163. A state may, and generally does, require a license conditioned upon compliance with certain specified general requirements and personal qualifications before it will authorize an individual to sell alcoholic beverages. The license so issued is not absolute, and may be terminated or suspended by a state even though it may have been valid when initially issued: Mahoney v. Joseph Triner Corp., 304 U.S. 401, 58 S. Ct. 952; Premier-Pabst Sales Co. v. Grosscup, 298 U.S. 226, 56 S. Ct. 754."

The Tahiti Bar case also clearly enunciated the principle that an individual has no basic constitutional right to engage in the business of selling alcoholic beverages.

We are also cognizant that section 1-104 of the Liquor Code of April 12, 1951, P.L. 90, 47 P.S. §1-104, provides as follows:

"This act shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and morals of the people of the Commonwealth and to prohibit forever the open saloon, and all of the provisions of this act shall be liberally construed for the accomplishment of this purpose."

Section 207(1) of the code, 47 PS §2-207, authorizes the board "[f]rom time to time, to make such regulations not inconsistent with this act as it

may deem necessary for the efficient administration of this act. The board shall cause such regulations to be published and disseminated throughout the Commonwealth in such manner as it shall deem necessary and advisable or as may be provided by law. Such regulations adopted by the board shall have the same force as if they formed a part of this act."

Appellant contends that the regulation under consideration is not reasonably appropriate or needful to render the exercise of the board's power effective. Moreover, it is maintained, the regulation is not obviously addressed to a known evil and that its scope exceeds the bounds of reason and burdens a licensee in the conduct of his business.

We do not concur in appellant's views. It should be noted that the regulation does not seek to *prohibit* the playing of what counsel for appellant chooses to label "sedate music." The restriction purports to *limit* the sound of music, be it sedate or rock, or other entertainment, to be inside of licensed premises thus protecting neighbors, street pedestrians, and others from being subject to unwanted sounds—that which might well be described as "noise pollution." We concur with the contention of the board that ". . . at a minimum it is reasonable to require a licensee to keep the volume of music, as amplified through a loudspeaker, out of earshot of pedestrians and residents in the area."

We are obliged to hold that the regulation is a valid exercise of the police power and does not constitute an arbitrary or unnecessary intrusion into the conduct of appellant's licensed business.

Having concluded that the regulation on its face is valid we shall consider the evidence before us:

In the first place, it must be noted that the board did not cite appellant because of an isolated incident or for the reason that sound emanated from the establishment when doors may have been opened and closed on a cold winter night to permit patrons to enter or leave. Visits to the premises were made by board agents on July 24, July 30 and August 6, 1973.

The testimony establishes that music, amplified by a Bogen speaker within the premises, could be heard by the agent on July 24 at 12:15 p.m. a distance of 75 feet in several directions. On the visit of July 30, 1973, at 11:00 p.m., the music was heard in the kitchen of a complaining neighbor and at 9:45 p.m. on August 6, 1973, the agent again visited the premises and heard the music a distance of 75 feet to the north, south and east.

The only testimony presented by appellant was that of the operator of the sound system. In summary, he described the sound levels and stated that he periodically made a check outside the establishment and could hear no music except when the doors opened or closed. He was unable, however, to recall the situation on the dates of the agent's visits. Upon weighing the testimony and the credibility of the witnesses we have no hesitancy in concluding that the board met its burden of proof.

## ORDER

Now, November 19, 1974, the appeal of Smart, Inc. from the decision of the Pennsylvania Liquor Control Board (citation 1299—1973) is dismissed and its order of February 22, 1974 sustained.