## Imports of Malt and Brewed Beverages (No. 2)

KANE, Attorney General, January 26, 1976—In our Attorney General's Opinion No. 75-18 dated June 2, 1975, 69 D. & C. 2d 608, we concluded that an importing distributor licensed by the Liquor Control Board may purchase malt or brewed beverages from out-of-State retailers and sell them anywhere in Pennsylvania, provided that the person from whom they are purchased is engaged in the legal sale of such beverages in the State where the sale

has occurred. This was based upon the following language of section 431(b) of the Liquor Code of April 12, 1951, P. L. 90, as amended, 47 PS §4-431(b):

"Except as hereinafter provided, such license shall authorize the holder thereof to sell or deliver malt or brewed beverages in quantities above specified *anywhere within the Commonwealth of Pennsylvania* which, . . . in the case of importing distributors, have been purchased from manufacturers or *persons outside this Commonwealth engaged in the legal sale of malt or brewed beverages* or from manufacturers or importing distributors licensed under this article." (Emphasis supplied.)

We further concluded that other language of the same section, to the effect that out-of-State manufacturers must establish geographical distribution systems whereby importing distributors are given exclusive rights to sell the manufacturer's beverages in given geographical areas of the State, is not applicable where the out-of-State purchases are from persons other than manufacturers. The pertinent language of section 431(b) is as follows:

"Each out of State manufacturer of malt or brewed beverages whose products are sold and delivered in this Commonwealth shall give distributing rights for such products in designated geographical areas to specific importing distributors, and such importing distributor shall not sell or deliver malt or brewed beverages manufactured by the out of State manufacturer to any person issued a license under the provisions of this act whose licensed premises are not located within the geographical area for which he has been given distributing rights by such manufacturer. . . ."

Since the issuance of Opinion No. 75-18, it has been brought to our attention that our conclusion

regarding the last-quoted language is very broad and could lead to a breakdown of the orderly marketing of malt and brewed beverages that the geographical distribution system was designed to effect. It has been suggested that our opinion would allow the entire distribution scheme to be circumvented by unscrupulous importing distributors who could buy any brands of malt or brewed beverages from out-of-State sources other than manufacturers and sell them anywhere in Pennsylvania in violation of the geographical distribution systems established by the manufacturers in accordance with law. This, it is said, would be contrary to the interpretation of section 431(b) rendered by the Commonwealth Court, in Commonwealth v. Starr, 13 Pa. Commonwealth Ct. 415, 318 A.2d 963 (1974), as follows:

"The Legislature having seen fit to regulate the distribution of malt and brewed beverages, by limiting the scope of such distribution to specific areas designated by the manufacturer, has thereby provided an easily traceable transaction readily susceptible to observation and control. The statute must be read so as to preserve this supervisory scheme."

Of course it was not our intention to allow the circumvention of the distribution requirements of section 431(b) or to reach a conclusion contrary to that of the Commonwealth Court, although we can see how our opinion, as written, does lend itself to that construction. What we meant to say, and what we do say now, is that malt and brewed beverages purchased out-of-State may be brought into Pennsylvania and sold anywhere in the State only if the manufacturers of such malt and brewed beverages have not marketed their products in Pennsylvania and for that reason have not established

geographical distribution systems as required by section 431(b). This means that if there is no distribution system for a product, an importing distributor would not be bound by any.

To illustrate our conclusion, as now explained, an importing distributor could purchase Coors Beer from an out-of-State retail outlet, provided that the sale is legal in the State where it occurs and sell it anywhere in Pennsylvania, since the manufacturer of Coors Beer has chosen not to market its beer in Pennsylvania and has not established a geographical distribution system. However, with regard to the beer of a manufacturer that has established a geographical distribution system in Pennsylvania, the importing distributor would not be permitted to buy it from out-of-State sources and sell it in violation of that distribution system.

Insofar as our Opinion No. 75-18 may have been susceptible of another interpretation, we hereby supplement it so that the conclusion expressed therein shall be read in conformity with this opinion.