**PENNSYLVANIA STATE POLICE BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant,**

v.

**D'ANGIO, INCORPORATED T/A/D/B/A Sammy's Hide–A–Way.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs April 6, 1995.

Decided Oct. 13, 1995.

Reconsideration Denied Dec. 1, 1995.

Donald K. Gardner, Assistant Counsel, for appellant.

Franklin E. Kepner, Jr., and Matthew W. Lent for appellee.

Before PELLEGRINI and NEWMAN, JJ., and KELTON, Senior Judge.

PELLEGRINI,[1] Judge.

This is an appeal from a decision of the Court of Common Pleas of Luzerne County (trial court) that when a licensee's liquor license was in safekeeping with the Liquor Control Board (Board) and not physically displayed at the licensed premises, it was not a licensed premises subject to Section 493(10) of the Liquor Code's[2] prohibition against lewd, immoral or improper entertainment on licensed premises.

D'Angio, Incorporated (Operator) had a liquor license to serve liquor at its restaurant at 935 East 3rd Street, Nescopeck, Pennsylvania (Premises). On February 15, 1993, Operator returned its liquor license to the Board for safekeeping. While Operator no longer sold liquor on the premises, it operated a "bring your own bottle" club (BYOB). There is no dispute that BYOB establishments are not subject to any regulation by the Board.[3]

On February 20, 1993 and March 6, 1993, enforcement officers visited the premises and found entertainment being provided consisting of totally nude dancers. Even though the license was in safekeeping, enforcement agents issued a citation for violating Section 493(10) of Liquor Code, Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–493(10), making it unlawful for a licensee to permit lewd entertainment at a licensed liquor establishment. The Operator moved to quash, alleging that because his license was in safekeeping, he was not operating as a licensee and could not be charged with violating this provision.

■ Both the Administrative Law Judge and the Board agreed, holding that because the license was in safekeeping, the Operator was not subject to being charged with violations of the Liquor Code that did not deal with the dispensing of liquor. Their decisions were based in part that Section 467 of

---

1. The opinion in the above-captioned matter was reassigned to the author on September 12, 1995.

2. It shall be unlawful for any licensee ... to permit in any licensed premises any lewd, immoral or improper entertainment ... any violation of this clause shall ... subject the licensee to suspension or revocation of his permit and his

license. Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. § 4–493(10).

3. *See: Dean v. City of Harrisburg,* 128 Pa. Cmwlth. 431, 563 A.2d 965 (1989), *petition for allowance of appeal denied,* 526 Pa. 640, 584 A.2d 322 (1990).

the Liquor Code, 47 P.S. § 4–467, provides that "[e]very license issued under this article shall be constantly and conspicuously exposed under transparent substance on the licensed premises and no license shall authorize sales until this section has been complied with." Without being able to post a license because it is in safekeeping, an operator could no longer sell liquor under license and could not be charged with violations for ancillary activity, such as lewd conduct, under the Liquor Code.[4] The Pennsylvania State Police, Bureau of Liquor Enforcement (Bureau) appealed to the trial court which affirmed. This appeal followed.

■ The Bureau contends that the trial court erred in holding that a licensee can become unlicensed and shield itself from applicability of the Code simply by virtue of returning its license for safekeeping. The Bureau contends that the inability to post the license and operate the liquor establishment is not controlling because the license itself remains valid awaiting reactivation by licensee under 40 Pa.Code § 7.31.[5] Because the license is valid while it is in safekeeping, the Bureau then argues that means a licensee has the same privileges and is subject to the same restrictions as when a licensee was operating a liquor establishment, including being able to be cited for violating the Liquor Code.

However, while 40 Pa.Code § 7.31 does provide that a liquor license is valid while in safekeeping, it ignores the fact that it then goes on to provide that once that occurs, operations under the license have ceased. By providing that the license "will be held in safekeeping for the benefit of the licensee

and *be available for his use when operations are resumed at the licensed premises,* or for transfer," (emphasis added) shows that under this regulation, a license is not subject to being cited under the Liquor Code. By stating that the license is only available for use when operations are resumed, that language conversely indicates that when the license is held in safekeeping, the *operations* for which a liquor license is issued have, for all intents and purposes, ceased. Because it only is available for use and not in use, Operator is not subject to being charged with any violation of the Liquor Code.

Consistently, we have also interpreted Section 467 of the Liquor Code, the provision that requires a license to be posted, to mean that when there is no license to post because it is in safekeeping, no right continues to exist in licensee to continue to operate a liquor establishment. In *Commonwealth v. Berresford,* 139 Pa.Cmwlth. 556, 590 A.2d 1379 (1991), the license of a beer distributor was seized pursuant to a writ of execution on a money judgment and physically removed from the licensed premises. The Sheriff delivered the license to the Pennsylvania Liquor Control Board for safekeeping. Enforcement agents discovered that licensee continued to sell beer and citations were issued. Licensee argued that the citations could not be maintained because, even though in safekeeping, he had a beer distributor's license to sell the beer for which the citations were issued. Rejecting that argument, we held that:

> When read together, the obvious intent of both of these sections is that, in order to operate a beer distributorship, (a place

---

4. An agency's interpretation of a statute through regulations is entitled to great judicial deference and will not be disregarded by this Court unless clearly inconsistent with the statute. *See Smith-Kline Beckman Corp. v. Commonwealth,* 85 Pa. Cmwlth. 437, 482 A.2d 1344 (1984), *aff'd,* 508 Pa. 359, 498 A.2d 374 (1985).

5. 40 Pa.Code § 7.31, entitled "Surrender of licenses in certain cases," provides, in pertinent part:

   (a) A licensee whose licensed establishment is not in operation for a period of 15 consecutive days shall return his license ... to the Board not later than the expiration of the 15 day

period. The return of the license ... will not invalidate the license, which will be held in safekeeping for the benefit of the licensee and be available for his use when operations are resumed at the licensed premises, or for transfer.

(b) If the license is returned because the licensee no longer has a lease for the licensed premises, or removes therefrom, or is dispossessed by legal process, the license will be invalidated as to the premises for which issued but will not be invalidated generally nor cancelled, and will be held in safekeeping for the benefit of the licensee for transfer only. 40 Pa.Code § 7.31(a) and (b).

where sales are made), the distributor must have a license. Section 467 of the Code further requires that 'every license issued under this article shall be constantly and conspicuously exposed under transparent substance on the licensed premises and no license shall authorize sales until this section has been complied with.' Id. Hence, the Code makes it clear that a licensee must physically possess and display his or her license. See also *Griffin Liquor License Case*, 38 Pa.Cmwlth. 596, 394 A.2d 676 (1978).

*Id.* at 560, 590 A.2d at 1381 (footnote omitted). Again, because no right is conferred on one that has a license in safekeeping, conversely, there is no ability to cite for violations of the Liquor Code when the license is in the same status.

Accordingly, we agree with the Board and the trial court that if you do not have a license to display, you have neither the privileges nor restrictions as a licensee who is operating under a liquor license. If you have neither the restrictions nor privileges, you cannot be charged with a violation. The decision of the trial court is affirmed.

### ORDER

AND NOW, this 13th day of October, 1995, the order of the Court of Common Pleas of Luzerne County dated July 1, 1994, is hereby affirmed.

KELTON, Senior Judge, dissenting:

I respectfully dissent because I disagree with the majority's reasoning that a liquor licensee can shield itself from applicability of the Liquor Code simply by virtue of placing its liquor license in safekeeping. The majority finds that, when a license is held in safekeeping, the operations for which a liquor license is issued have, for all intents and purposes, ceased. Thus, the majority concludes that a licensee cannot be charged with a violation of the Code when its license is *available for use* but is not *in use* because the license is in safekeeping.

I find no support in either the Liquor Code or the regulations promulgated pursuant thereto for the majority's judicially-created

distinction between a so-called "operating licensee" and a licensee with his license in safekeeping. To the contrary, there is every indication that merely having one's license in safekeeping does not preclude a licensee from being subject to all of the provisions of the Code and all of the obligations attendant to having a license.

The regulation under which Licensee submitted its license for safekeeping is found in 40 Pa.Code § 7.31, which, in pertinent part, provides as follows:

(a) A licensee whose licensed establishment is not in operation for a period of 15 consecutive days shall return his license ... to the Board not later than the expiration of the 15 day period. *The return of the license ... will not invalidate the license, which will be held in safekeeping for the benefit of the licensee and be available for his use when operations are resumed at the licensed premises,* or for transfer.

(b) If the license is returned because the licensee no longer has a lease for the licensed premises, or removes therefrom, or is dispossessed by legal process, *the license will be invalidated as to the premises for which issued but will not be invalidated generally nor cancelled, and will be held in safekeeping for the benefit of the licensee for transfer only.*

40 Pa.Code § 7.31(a) and (b) (emphasis added). In addition, safekeeping is also mandated in the following specific situation:

(b.1) In the event that any person to whom a license shall have been issued under the provisions of this article shall become insolvent, make an assignment for the benefit of creditors, become bankrupt by either voluntary or involuntary action, the license of such person shall be immediately placed in safekeeping with the board for the balance of the term of the license and for an additional period of one year upon application to the board by the trustee, receiver, or assignee. *The trustee, receiver, or assignee shall have, during said period of safekeeping, the same rights, benefits and obligations as to the license as the person to whom the license had been issued,* including the right to transfer the license subject to the approval of the

board. The license shall continue as a personal privilege granted by the board and nothing herein shall constitute the license as property.

47 P.S. § 4-468(b.1) (emphasis added).

As stated in 40 Pa.Code § 7.31, the regulation providing for safekeeping was promulgated for the benefit of the licensee. Its purpose is to preserve the validity of the license until the licensee is able either to resume operations or to transfer its license.[1] By the regulation's very language, a license remains valid while in safekeeping. Absent safekeeping, a licensee's privilege to sell liquor would be extinguished if the doors of the licensed premises had to stay closed for greater than fifteen days.

In addition, as stated in Section 468(b.1) of the Code, the trustee, receiver or assignee shall have the same *rights, benefits and obligations* in the license as the licensee while it is in safekeeping. I submit that the General Assembly made it clear that the licensee has both privileges and duties while its license is in safekeeping.

For example, a licensee retains a residual right in the license during safekeeping that can be re-activated by filing an application for return of the license, paying $50.00 and re-submitting to an additional background investigation with a $100.00 fee. 40 Pa.Code § 7.31(e).

Additionally, when a license is in safekeeping, it can still expire and must be renewed just like any other license. *Pennsylvania Liquor Control Board v. Wayside Bar, Inc.,* 120 Pa.Cmwlth. 176, 547 A.2d 1309 (1988). Even when a license has expired and has not been renewed, the establishment is still considered a licensed premises because, under Section 470 of the Code, a licensee has a ten month grace period in which to secure renewal of the license after expiration. 47 P.S. § 4-470(a).

Even Licensee acknowledges that at least some Code provisions apply while its license is in safekeeping. For example, if it had been serving alcohol while its license was in safekeeping, Licensee concedes that a Code violation would have occurred. Licensee's argument that, of course it is subject to certain Code provisions, just not Section 493(10),[2] is devoid of logic. If Licensee's argument is taken to its logical conclusion, then it would not be subject to *any* Code provisions while its license was in safekeeping.

In a section entitled "Interpretation of act," the General Assembly provided that the Code "shall be deemed an exercise of the police power of the Commonwealth for the protection of the public welfare, health, peace and *morals* of the people of the Commonwealth." 47 P.S. § 1-104 (emphasis added). Section 493(10) of the Code, which prohibits immoral conduct in licensed premises, goes right to the heart of Section 104, wherein the General Assembly declared its intent to protect the people's *morals*.

Absent legislative authority, I simply find no reason to single out one Code provision as being inapplicable during a license surrender period without including all of the other provisions. Further, I believe that the majority's resolution results in interpreting the Code in such a way as to nullify several of its most important provisions, Sections 104 and 493(10).[3] Section 1922 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1922.

1. Here, Licensee submitted its license for safekeeping for at least one of the reasons included in the regulation:

The license will be offered for sale. This safekeeping is requested because of the non-availability of dramkeepers insurance and the inability to operate in a profitable manner. (February 15, 1993 Letter from Counsel for Licensee to the Board, R.R. 9a.)

2. 47 P.S. § 4-493(10).

3. In Section 471(b) of the Code, the General Assembly singled out Section 493(10) to the extent that it grouped it with other offenses which it deemed to be similarly egregious and provided that if a licensee has been cited for a violation of Section 493(10) or one of the other serious offenses listed, its appeal shall not act as an automatic supersedeas unless the reviewing authority determines otherwise upon sufficient cause shown. 47 P.S. § 4-471(b). Additionally, I note that there have been numerous instances where Section 493(10) has been enforced. *E.g. In re Tahiti Bar, Inc.,* 395 Pa. 355, 150 A.2d 112 (1959); *Commonwealth v. DiMarco,* 26 Pa. Cmwlth. 504, 364 A.2d 755 (1976).

Additionally, I respectfully disagree with the majority's interpretation of Section 467 of the Code,[4] which requires a liquor license to be posted. The majority cites *Commonwealth v. Berresford*, 139 Pa.Cmwlth. 556, 590 A.2d 1379 (1991) in support of its argument that when there is no license to post because it is in safekeeping, no right continues to exist in a licensee to continue to operate a liquor establishment. In *Berresford*, we held that a beer distributorship with its license seized pursuant to a writ of execution on a money judgment and physically removed from the premises could be cited for selling beer.

*Berresford* is not a "safekeeping" case. It is a case where a licensee's license was seized pursuant to a writ, not a situation where, as here, the licensee placed its license in safekeeping *for its own benefit* until it later chose either to re-activate it or ultimately to transfer it. While it is true that in both cases, a licensee could be cited for selling alcoholic beverages, the licensee with its license in safekeeping retains benefits that are not available to the licensee with its license subject to a writ. Again, the safekeeping regulation was promulgated for the benefit of the licensee. 40 Pa.Code § 7.31.

In addition, while Section 467 does require the display of licenses on the licensed premises, it does not provide that "licensed" premises are only ones where a license is physically on display. Significantly, Section 102 of the Code, the definition section, contains no definition of "licensed premises." Therefore,

I would decline to adopt the one devised and proposed by Licensee for its own benefit.

Keeping in mind the fact that the liquor industry is highly regulated,[5] that a liquor license is a privilege,[6] that the Code is remedial in nature and has the purpose of restricting the sale of liquor, not promoting it,[7] I believe that the Code provisions should be liberally construed for the protection of the public welfare, health, peace and morals of the people of the Commonwealth. *Pennsylvania Liquor Control Board v. Starr*, 13 Pa.Cmwlth. 415, 318 A.2d 763 (1974), *aff'd*, 462 Pa. 124, 337 A.2d 914 (1975). Accordingly, I would conclude that the mere removal of a license from the wall of a licensed premises does not mean that the licensee is no longer subject to Section 493(10) of the Code.[8]

Therefore, contrary to the majority, I believe that the trial court's July 1, 1994 order should have been reversed.

---

4. 47 P.S. § 4-467.

5. *Commonwealth of Pennsylvania v. Wilsbach Distributors, Inc.*, 513 Pa. 215, 519 A.2d 397 (1986); *1916 Delaware Tavern, Inc. v. Zoning Board of Adjustment and the City of Philadelphia*, —— Pa.Cmwlth. ——, 657 A.2d 63 (Pa.Cmwlth. 1995).

6. *1412 Spruce, Inc. v. Pennsylvania Liquor Control Board*, 504 Pa. 394, 474 A.2d 280 (1984).

7. *Pennsylvania Liquor Control Board v. Burrell Food Systems, Inc.*, 97 Pa.Cmwlth. 101, 508 A.2d 1308 (1986), *petition for allowance of appeal denied*, 513 Pa. 636, 520 A.2d 1386 (1987).

8. Licensee points out that, at the time of the alleged violation, it was operating as a "BYOB" club, which is not subject to the Liquor Code. *Dean v. City of Harrisburg*, 128 Pa.Cmwlth. 431, 563 A.2d 965 (1989), *petition for allowance of appeal denied*, 526 Pa. 640, 584 A.2d 322 (1990). Thus, Licensee contends that, since Liquor Code provisions concerning entertainment are ancillary to the regulation of alcoholic beverages, there is no reason to extend the Code provisions to a "BYOB" premises.

   Even though the parties stipulated that the premises was operating as a "BYOB" club, that does not mean that Licensee's decision to operate on a "BYOB" basis and to place its license in safekeeping nullified the premises' licensed status. Here, solely for its own benefit, Licensee simply chose not to exercise its privilege of selling alcoholic beverages for an indefinite time period in order to conduct totally nude dancing with impunity. I believe that that unilateral decision did not change the official status of the premises.