**PENNSYLVANIA STATE POLICE, BUREAU OF LIQUOR CONTROL ENFORCEMENT, Appellant,**

v.

**CLIFF 1401 CORPORATION.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Oct. 13, 1995.

Decided Dec. 29, 1995.

James A. Saylor, Assistant Counsel, for appellant.

Richard L. Hahn, for appellee.

Before PELLEGRINI, and NEWMAN, JJ., and KELTON, Senior Judge.

KELTON, Senior Judge.

The Pennsylvania State Police, Bureau of Liquor Control Enforcement (Bureau) appeals from the May 5, 1994 order of the Court of Common Pleas of Philadelphia County (trial court) denying the Bureau's appeal and affirming the February 10, 1994 order of the Pennsylvania Liquor Control Board (Board) granting Cliff 1401 Corporation's (Licensee's) appeal. The sole issue before us is whether the trial court erred in determining that the Licensee continued to possess a valid liquor license after the Sheriff of Philadelphia seized the license pursuant to a writ of execution.[1] We find that the court did err and, accordingly, reverse.

---

1. Where, as here, the trial court has taken no    additional evidence, our scope of review is limit-

The facts in this case are not disputed. On March 18, 1993, a deputy sheriff levied upon Licensee's personal property, seized its liquor license and removed it from the premises.[2] (R.R. 41a.) Thereafter, a bureau officer visited the premises, found the premises to be open and directed Licensee to cease all sales of alcoholic, brewed or malt beverages.

On April 15, 1993, the Bureau cited Licensee with violating Sections 491(1), 492(2) and 492(3) of the Liquor Code.[3] (R.R. 6–7a.) Section 491(1) prohibits the sale of liquor without complying with the Code and, respectively, Sections 492(2) and 492(3) prohibit the sale without a license of liquor to be consumed on and off the premises.

On October 1, 1993, Administrative Law Judge (ALJ) Tania E. Wright entered an order requiring Licensee to pay a $200.00 fine because, due to the sheriff's seizure of the license, Licensee failed to constantly and conspicuously expose the license at the time a bureau officer entered the premises. The ALJ relied on *Commonwealth v. Berresford*, 139 Pa.Cmwlth. 556, 590 A.2d 1379 (1991), a forfeiture case in which we held that a licensee violated the Liquor Code when it sold beer while its license was in safekeeping due to a sheriff's seizure of the license pursuant to a writ of execution on a money judgment.

On appeal, the Board reversed the ALJ, holding that there was no substantial evidence to support violations of Sections 491(1), 492(2) and 492(3) of the Liquor Code because the license was not invalid at the time Licensee made the sale of alcoholic beverages. The Board rejected the ALJ's reliance on *Berresford*, stating that as a forfeiture case, it was inapplicable to a citation matter.

In affirming the Board, the trial court did not consider the *Berresford* case, but gave deference to the Board's interpretation of the Code:

> [T]he LCB, which is charged with the responsibility of administering the Liquor Code, opined that a 'license issued by [us] remains valid until it is invalidated in accordance with [Pennsylvania law].' It added, the license itself is nothing more than 'the physical embodiment of the privilege bestowed under the law,' and reasoned that its physical seizure by a sheriff pursuant to a writ of execution, could not 'invalidate' the underlying privilege.

(Trial Court's February 7, 1995 Opinion in Support of its May 5, 1994 Order at 1.)

On appeal to this Court, the Bureau argues that the trial court erred in failing to follow *Berresford*. We agree. In that case, pursuant to a writ of execution on a money judgment, the Sheriff of Beaver County seized the licensee's liquor license, physically removed it from the premises and then delivered it to the Board for safekeeping. After the Bureau conducted an investigation and learned that licensee was selling beer to customers without the license, an employee was arrested and charged with violating Section 492(3) of the Liquor Code, 47 P.S. § 4–492(3).

The *Berresford* licensee argued that, even though the license was in safekeeping, the 8 kegs, 112 cases of beer and $57.46 should not be subject to forfeiture because he had a license to sell the beer for which the charge had been issued. We held that

> in order to operate a beer distributorship, (a place where sales are made), the distributor must have a license. Section 467 of the Code further requires that 'every license issued under this article shall be constantly and conspicuously exposed under transparent substance on the licensed premises and no license shall authorize sales until this section has been complied with.' Hence, the Code makes it clear that a licensee must physically possess and display his or her license. *See also Griffin*

---

ed to determining whether the court committed an error of law or abused its discretion. *Pennsylvania State Police v. R–Lounge, Ltd.,* 166 Pa. Cmwlth. 227, 646 A.2d 609 (1994).

**2.** The deputy testified that the Sheriff's Department still had the liquor license in its office because there was a property claim filed. (R.R.

16–17a.) The factfinder noted that "the license was never returned to the Pennsylvania Liquor Control Board." (Administrative Law Judge's Adjudication at 4.)

**3.** Act of April 12, 1951, P.L. 90, *as amended,* 47 P.S. §§ 4–491(1), 4–492(2) and 4–492(3).

*Liquor License Case,* 38 Pa.Commonwealth Ct. 596, 394 A.2d 676 (1978).

*Berresford,* 590 A.2d at 1381 (footnote omitted). Thus, having concluded that the Commonwealth produced unrebutted evidence that the licensee's inventory was unlawfully used to further the licensee's operation of a distributorship without a license, we vacated the trial court's order and remanded the matter with directions to enter an order directing forfeiture.

We conclude that *Berresford* is controlling here and find the fact that it was a forfeiture case to be irrelevant. Both *Berresford* and the case before us involved writs of execution, the absence of liquor licenses from the premises and the subsequent sales of liquor without the virtue of licenses. As in *Berresford,* once the license here was seized and removed from the premises, Licensee was no longer licensed. Thus, any sale of liquor automatically subjected him to Code citations.

Additionally, in *Berresford,* we cited the non-forfeiture case of *Griffin Liquor License Case,* 38 Pa.Cmwlth. 596, 394 A.2d 676 (1978), in support of the proposition that "a licensee must physically possess and display his or her license." *Berresford,* 590 A.2d at 1379. In *Griffin,* the Board had issued an order suspending the restaurant liquor license of the licensees for three days or longer pending their correction of unsanitary conditions on the premises. When licensees sold liquor prior to the restoration of the license, they were cited for selling alcoholic beverages during a time when the license was under suspension. We noted that the licensees "sold alcoholic beverages at a time when they did not have a license, *for whatever reason.*" *Griffin,* 394 A.2d at 676 (emphasis added). Thus, we held that, whether or not they had corrected the unsanitary conditions, they could not legally dispense alcoholic beverages prior to the physical restoration of their license on the premises.

We find the holding of *Griffin* to be applicable to the citation case before us. Just as the absence of the license from the premises

in *Griffin* due to suspension for unsanitary conditions subjected those licensees to Code violations, the seizure of the license in the case before us similarly rendered Licensee vulnerable to Code citations. For the period of time the licenses were absent from the *Berresford, Griffin* and Cliff 1401 premises, the licensees were no longer licensees with the privilege to dispense alcoholic beverages on their respective premises.

In the recent case of *Pennsylvania State Police, Bureau of Liquor Control Enforcement v. D'Angio, Incorporated, T/A/D/B/A Sammy's Hide–A–Way,* 666 A.2d 1114 (Pa. Cmwlth.1995),[4] we considered the issue of whether a licensee whose liquor license was in safekeeping with the Board and not physically on display could be subject to Section 493(10)[5] of the Code's prohibition against lewd, immoral or improper entertainment on licensed premises. We concluded that, because a license in safekeeping is only "available for use and not in use, Operator is not subject to being charged with any violation of the Liquor Code." *Id.,* slip op. at 1116.

Also in *D'Angio,* we discussed *Berresford* and noted that "we have also interpreted Section 467 of the Liquor Code, the provision that requires a license to be posted, to mean that when there is no license to post because it is in safekeeping, no right continues to exist in licensee to continue to operate a liquor establishment." *D'Angio,* slip op. at 1116. Thus, we concluded that "because no right is conferred on one that has a license in safekeeping, conversely, there is no ability to cite for violations of the Liquor Code when the license is in the same status." *Id.* at 1117.

We note that, although we reach a different outcome in the case before us than in *D'Angio,* the results are not inconsistent. In *D'Angio,* the former licensee was not subject to liability for lewd entertainment because he *was not* a licensee. In our case, the former licensee *was* liable for the sale of liquor where he was no longer a licensee.

---

4. By a December 1, 1995 order, this Court denied the Bureau's petition for reargument before our Court.

5. 47 P.S. § 4–493(10).

██ Accordingly, we conclude that the trial court erred in determining that Licensee continued to possess a valid liquor license after the Sheriff of Philadelphia seized the license pursuant to a writ of execution.

For the above reasons, we reverse the trial court's May 5, 1994 order.

## ORDER

AND NOW, this 29th day of December, 1995, the order of the Court of Common Pleas of Philadelphia County dated May 5, 1994 is hereby reversed.

