COMMONWEALTH of Pennsylvania,
Appellant,

v.

Alvin Woodrow TOME, Appellee.

Superior Court of Pennsylvania.

Submitted June 14, 1999.

Filed July 30, 1999.

Reargument Denied Oct. 7, 1999.

Susann M. Bisignaro, Asst. Dist. Atty., York, for Com., appellant.

Farley G. Holt, York, for appellee.

Before HUDOCK and STEVENS, JJ., and CIRILLO, President Judge Emeritus:

CIRILLO, President Judge Emeritus:

¶ 1 The Commonwealth of Pennsylvania appeals from a judgment of sentence entered in the Court of Common Pleas of York County. We reverse.

¶ 2 After a jury trial, Appellee, Alvin Woodrow Tome, was convicted of possessing and operating illegal gambling devices, 18 Pa.C.S. § 5513, and selling malt or brewed beverages for consumption without a valid license, 47 P.S. § 4–492(2).[1] The

---

1. The specific subsection of the Liquor Code which Tome has violated reads:

§ 4–492. **Unlawful acts relative to malt or brewed beverages and licensees**

It shall be unlawful. –

\* \* \*

(2) For any person, to sell to another for consumption upon the premises where sold or to permit another to consume upon the premises where sold, **any malt or brewed beverages**, unless such person holds a valid retail dispenser license or a valid liquor license issued by the board authorizing the sale of malt or brewed beverages for consumption upon such premises.

47 P.S. § 4–492(2).

trial testimony reveals that undercover Pennsylvania State Trooper Denise Karbowski attempted to gain entry to an establishment owned by Tome. Karbowski had been given a tip by an informant that the premises was considered a "speakeasy" and only those persons who were "known members" were admitted. The trooper was able to enter the premises under the pretense that she needed to use a telephone. After using the phone, Trooper Karbowski requested a Coors Light beer to wash down two aspirins. A woman behind the bar gave Karbowski a beer; Karbowski paid the female bartender $1.25 for the beer. At this time, Karbowski also observed the woman behind the bar serve other individuals beer and take money from them in exchange for the beverages.

¶ 3 A valid search warrant was subsequently executed for Tome's premises. Two-thousand four-hundred forty cans of beer, seventy-two bottles of beer, four bottles of wine, three illegal video poker machines, forty-two illegal punchboard games and $6,329.95 in cash were confiscated from the premises. After trial, the judge imposed a twenty-three month period of probation and directed Tome to pay a fine of $500.00 for the liquor violations and an additional fine of $70,900.00, pursuant to 47 P.S. § 4–494(c).

¶ 4 Tome filed timely post-trial motions requesting reconsideration of his sentence. After a hearing, the court granted the motions and vacated $8,100.00 of the fine as the Commonwealth conceded that Tome had not been charged with selling liquor without a license. In addition, the trial court vacated the penal fines with regard to the sale of malt or brewed beverages based upon the misapprehended fact that there were 2,512 **bottles** of beer found on Tome's premises. In fact, the court determined that there were only 72 **bottles** of beer found on the premises, and that the

remaining 2,440 containers of beer consisted of **cans**. Accordingly, the court amended its previous sentencing order to reflect a total penal fine of $1,800.00 (72 bottles at a fine of $25/each). The Commonwealth filed its appeal from this order. On appeal, the Commonwealth raises the following issue for our consideration:

> Whether the trial court erred in reducing Appell[ee]'s fine for selling malt or brewed beverages without a license from $62,800 to $1,800 where 47 P.S. § 4–494(c) provides for a $25 fine for each **bottle** of beer and Appellee possessed 2[,]440 **cans** of beer and only 72 **bottles** of beer?

¶ 5 Subsection 4–494(c), the relevant provision at issue on appeal, is found within our Commonwealth's Liquor Code, 47 P.S. §§ 1–101 *et seq.*[2] In 1994, the legislature amended 47 P.S. § 4–494 by adding subsection (c), which states:

> A person convicted of selling or offering to sell any liquor or malt or brewed beverage without being licensed is in violation of this article and shall, in addition to any other penalty prescribed by law, be sentenced to pay **a fine of twenty-five dollars ($25) for each bottle of beer** and one-hundred dollars ($100) for each bottle of wine or liquor found on the premises where the sale was made or attempted. In addition, all beer, wine and liquor found on the premises shall be confiscated.

47 P.S. § 4–494(c) (emphasis added).

¶ 6 The Liquor Code has been liberally construed in the interest of public welfare, health, peace and morals of the people of the Commonwealth. *See Pennsylvania v. Starr*, 13 Pa.Cmwlth. 415, 318 A.2d 763 (1974), *affirmed*, 462 Pa. 124, 337 A.2d 914 (1975); *In re Weiss' Liquor License*, 187 Pa.Super. 89, 142 A.2d 385 (1958).[3] The Code was intended to regulate and restrain the sale of liquor.

---

**2.** *See* Act of April 12, 1951, P.L. 90. § 461.

**3.** Contrary to Appellee's assertion, the Liquor Code is **not** penal in nature, and, therefore, we refuse to construe its provisions strictly.

*Pittsburgh Stadium Concessions, Inc. v. Commonwealth of Pennsylvania Liquor Control Board,* 674 A.2d 334 (1996). *See Application of Kensington Club,* 164 Pa.Super. 401, 65 A.2d 428 (1949) (liquor control acts are exertions of police power of state). It was not intended to promote the sales of liquor. *Application of Bethel Township Veterans Home Ass'n,* 180 Pa.Super. 159, 119 A.2d 613 (1956). Moreover, the clear and unambiguous wording of the Code may not be ignored and it may not be given an unreasonable interpretation. *In re Restaurant Liquor License of De Angelis,* 183 Pa.Super. 388, 133 A.2d 266 (1957).

¶ 7 We have uncovered no Pennsylvania legal authority interpreting section 4–494(c) of the Liquor Code. Our task, therefore, is to ascertain whether the word "bottle" in section 4–494(c) was intended to exclusively apply to one type of container of beer or whether it was meant to include different types of containers of beer, in this instance, a can of beer. In doing so, we are guided by principles of statutory construction.

¶ 8 It is axiomatic that the legislature does not intend an absurd or unreasonable result. *See* 1 Pa.C.S. § 1922(1) (presumptions in ascertaining legislative intent). As we examine the language of a statute, we must keep in mind that the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly; every law should be construed, if possible, to give effect to all its provisions. *See* 1 Pa.C.S. § 1921(a); *see also* Statutory Construction Act of May 28, 1937, P.L. 1019, § 51, 46 P.S. § 551. In ascertaining the intent of the legislature, courts may consider the consequences of a particular interpretation. *See* 1 Pa.C.S. § 1921(c).

¶ 9 When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit. 1 Pa. C.S. § 1921(b). Only when the statutory language is unclear may the Court delve into legislative intent. *Garcia v. Community Legal Services Corp.,* 362 Pa.Super. 484, 524 A.2d 980, 983 (1987). The principles of statutory construction indicate that "[w]henever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage." *In re Employees of Student Services,* 495 Pa. 42, 52, 432 A.2d 189, 195 (1981) (citations omitted).

¶ 10 The trial court acknowledges in its Pa.R.A.P. 1925(a) opinion that while it is "obligated to follow the strict technical language of the statute," such result is "ludicrous." The court further states: "However, [because] the Court cannot modify the exact language set forth by the Legislature[,] the Court does not believe it can impose a fine."

¶ 11 We agree with the trial court in that, if we were to adopt the court's narrow reading of section 4–494(c), we would be drawing a meaningless distinction between penalizing a person for his or her unlawful sale of malt or brewed beverages based simply upon the type of container in which the beverage is found. Such a result, at best, is absurd. 1 Pa.C.S. § 1922(1). We, however, are aware that we must give due meaning to the word "bottle" in section 4–494(c), and that we must not disregard the letter of the statute in our interpretation of the Code. We must be mindful not to sacrifice the legislative intent of the Liquor Code in the interest of preserving a narrow meaning of the word "bottle" as used in section 4–494(c).

¶ 12 Despite the fact that the word "bottle" itself may appear to be clear and unambiguous, when we examine the language of a statute, we must keep in mind that the object of all interpretation and construction of statutes is to ascertain and effectuate the intent of the legislature. 1 Pa.C.S. § 1921(a). To this end, we look to other sections of the Liquor Code, specifically, the Code's definition section, 47 P.S.

§ 1–102, to begin our analysis. The Code defines "container" as:

> [A]ny receptacle, vessel or form of package, tank, vat, cask, barrel, drum, keg, **can, bottle**, or conduit used or capable of use for holding, storing, transferring or shipment of alcohol, liquor or malt or brewed beverages.

47 P.S. § 1–102 (emphasis added). Moreover, an "original container" is defined in the Code as: all **bottles**, casks, kegs **or other suitable containers** that have been securely capped, sealed or corked by the manufacturer. 47 P.S. § 1–102 (emphasis added). An "original container" also has "the name and address of the manufacturer of the malt or brewed beverages contained or to be contained therein permanently affixed ... in the case **of a bottle or can**, to the cap or cork used in sealing the same of to a label securely affixed to a **bottle or can**." *Id.* (emphasis added). Nonetheless, the legislature chose to use narrower term "bottle" in section 4–494(c).

¶ 13 Furthermore, the section under which Tome was convicted, section 4–492(2), makes it unlawful for any unlicensed person to sell to another for consumption "any malt or brewed beverages."[4] The prohibited conduct in this section is based, in part, on the fact that a person is selling **any** type of malt of brewed beverage; it does not premise the illegality on the particular type of container in which the beverage is found.

¶ 14 The language of these various Code provisions demonstrate to us that the legislature did not intend to draw a meaningful distinction between a bottle of beer and a can of beer for purposes of being a "container" of a malt or brewed beverage. While a bottle and a can are definitely different types of containers, section 1–102 equates the two forms.

¶ 15 Finally, to construe the statute narrowly and conclude that the $25.00 fine in section 4–494(c) only applies to bottles of

beer would make light of the rather hefty annual fees owners of establishments are required to pay for a liquor license as mandated by the Liquor Code. *See generally* 47 P.S. § 4–405 (license fees). We would, in effect, be permitting persons to reap substantial monetary rewards by selling canned malt or brewed beverages without "paying their [licensing] dues."

¶ 16 In conclusion, we cannot reasonably justify interpreting the Code so that a person who sells beer contained in a bottle without a license would be fined, while that same unlicensed person's sale of the same beer in a can would be sanctioned. *Starr, supra* (reading the Liquor Code in a way that would prohibit a primary from distributing a product in Dauphin County, but which would allow a secondary to resell that same product in Dauphin County would make the control meaningless and thus be an absurd interpretation contrary to Section 1922 of the Statutory Construction Act, 1 Pa.C.S. § 1922(1)). To perpetuate the narrow reading of the Liquor Code that the trial court has adopted in the instant case would thwart the intent of the legislature—to regulate and restrain the improper sale of liquor, not to promote it. We, therefore, construe this provision liberally and, in doing so, conclude that penalties under section 4–494(c) are intended to apply to cans of beer, as well as bottles. *See* 47 P.S. 1–104 ("all of the provisions of this act [the Liquor Code] shall be liberally construed for the accomplishment of [its] purpose.").

¶ 17 Most importantly, however, we note that our result today does not dilute the meaning of the word "bottle" as found within section 4–494(c), nor does it negate the effect of fining unlicensed persons selling malt or brewed beverages in bottles. *In re Employees of Student Services, supra.* Rather, it reinforces the Commonwealth's important objective of regulating

---

**4.** The Code defines "malt or brewed beverages" as "any beer, lager beer, ale, porter or similar fermented malt beverage containing one-half of one per centum or more of alcohol by volume, by whatever name such beverage may be called." 47 P.S. § 1–102.

the possession, manufacture, sale, transportation, and use of alcohol. See *Starr, supra*; 1 Pa.C.S. § 1922(5) (the statute must be read to favor the public interest rather than any private interests).

¶ 18 We, therefore, vacate Tome's sentence and remand for a recalculation of penalties, under section 4–494(c), based upon the total amount of **bottles and cans** of beer found on Tome's premises.

¶ 19 Judgment of sentence reversed. Case remanded for proceedings consistent with this decision. Jurisdiction relinquished.