**COMMONWEALTH of Pennsylvania,**
**Appellee**

v.

**Natel BLESSITT, Appellant.**

Superior Court of Pennsylvania.

Argued Sept. 4, 2003.
Filed June 10, 2004.

Paul G. Gettleman, Portersville, for appellant.

John W. Peck II, Assistant District Attorney, and Leo J. Ciaramitaro, Assistant District Attorney, Greensburg, for Commonwealth, appellee.

Before: DEL SOLE, P.J., JOHNSON, HUDOCK, FORD ELLIOTT, JOYCE, STEVENS, MUSMANNO, TODD and KLEIN, JJ.

MUSMANNO, J.:

¶ 1 Natel Blessitt ("Blessitt") appeals from the judgment of sentence entered following his conviction of possession of a controlled substance, and delivery of a controlled substance.[1] We affirm the judgment of sentence.

¶ 2 On January 26, 2001, police arrested Blessitt for the sale of $20.00 worth of crack cocaine to an undercover police officer. Following a trial, a jury convicted Blessitt of the above-described charges. The trial court subsequently sentenced Blessitt to a prison term of 16 to 32 months. Thereafter, Blessitt filed the instant timely appeal.

¶ 3 In this appeal, Blessitt presents the following claims for our review:

1. 35 P.S. §§ 780–113(a)(16), 780–113(a)(30).

I. Did the trial court commit reversible error by giving a consciousness of guilt charge that prejudiced [Blessitt's] right to a fair trial where [Blessitt] inadvertently misspelled his name and said new Kensington instead of Pittsburgh, even though he gave the correct number and street address?

II. Did the trial court commit reversible error by allowing Trooper Thomas, who was not an expert witness, to offer an opinion that [Blessitt] handed a marked $20 bill to another person in the few seconds that [Blessitt] was out of the police officer's sight when there were no facts in evidence [on which] to base this opinion?

III. Was [Blessitt] denied effective assistance of counsel when his counsel failed to subpoena and call [two] witnesses to corroborate [Blessitt's] testimony?

IV. Was [Blessitt] denied effective assistance of counsel for not questioning the police officer about the lack of [Blessitt's] fingerprints on the package of cocaine as well as counsel's failure to argue the same issue to the jury to establish reasonable doubt as to [Blessitt's] involvement in the crime?

V. Was [Blessitt] denied effective assistance of counsel for failing to object to the prosecutor's misconduct during closing argument where the prosecutor improperly vouched for the credibility of a witness and gave his opinion as to what the proper verdict should be in the case?

*See* Brief for Appellant at 6.[2]

¶ 4 Blessitt first claims that the trial court erred when it gave a jury instruction on consciousness of guilt, based on testimony that Blessitt misspelled his name when asked by a police officer, and the fact that Blessitt indicated that he lived in New Kensington, when he actually lived in Pittsburgh. Blessitt claims that he inadvertently misspelled his name, and points out that he gave the police officer the correct street address for his residence.

■ ¶ 5 In reviewing the propriety of the refusal of a new trial, the appellate court's inquiry is whether the court below abused its discretion or committed an error of law that controlled the outcome of the case. *Commonwealth v. Patton,* 546 Pa. 562, 686 A.2d 1302, 1305 (1997).

■ ¶ 6 Our review of the record reflects that Blessitt did not object to the trial court's jury charge on consciousness of guilt. In fact, when the trial court informed defense counsel that it would issue its standard charge on consciousness of guilt, counsel responded: "That's fine." N.T., 11/29–30/01 at 89. Because counsel failed to object to the jury charge, that claim is waived on appeal. *See Commonwealth v. Gooding,* 818 A.2d 546, 552 (Pa.Super.2003) (stating that in order to preserve a challenge to the jury charge, the appellant was required to make a timely, specific objection before the jury retired).

¶ 7 In his second claim of error, Blessitt asserts that the trial court erred when it permitted Pennsylvania State Police Trooper Edward Thomas ("Thomas") to testify as to his belief that Blessitt had passed a marked $20 bill to another individual. According to Blessitt, Thomas's testimony was inadmissible as speculation and hearsay. We disagree.

■ ¶ 8 An appellate court may reverse a trial court's ruling on the admissibility of testimonial evidence only upon a showing that the trial court abused its discretion. *Commonwealth v. Randall,* 758 A.2d 669, 679 (Pa.Super.2000). "An abuse of discretion is more than just an

2. These claims have been renumbered for purposes of this appeal.

error in judgment and, on appeal, the trial court will not be found to have abused its discretion unless the record discloses that the judgment exercised was manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will." *Id.* (quoting *Commonwealth v. Hess,* 745 A.2d 29, 31 (Pa.Super.2000)).

¶ 9 The Pennsylvania Rules of Evidence do not prohibit a lay witness from offering an opinion at trial. Rule 701 permits a lay witness to offer an opinion in certain circumstances, and provides as follows:

> If the witness is not testifying as an expert, the witness' testimony in the form of opinions or inferences is limited to those opinions or inferences which are rationally based on the perception of the witness, helpful to a clear understanding of the witness' testimony or the determination of a fact in issue, and not based on scientific, technical, or other specialized knowledge within the scope of Rule 702 [which addresses testimony by experts].

Pa.R.E. 701.

■ ¶ 10 At trial, Thomas testified that on January 26, 2001, at about 4:50 p.m., he and another Pennsylvania State Trooper were traveling in a vehicle down a one-way street. N.T., 11/29–30/01, at 11. As the vehicle passed Blessitt, Thomas and Blessitt made eye contact. *Id.* At that time, the troopers pulled their vehicle off to the side of the road. *Id.* When Blessitt approached the vehicle, Thomas displayed a $20 bill and "asked [Blessitt if he had anything." *Id.* Blessitt initially accused Thomas of being a police officer. *Id.* However, Blessitt then advised Thomas to get out of the vehicle and follow him. *Id.* at 11–12. Thomas followed Blessitt up a dirt path along the side of a building, which was off of the sidewalk area. *Id.* at 13. Thereafter, Thomas handed Blessitt a marked $20 bill, at which time Blessitt handed Thomas a torn piece of a plastic baggie containing crack cocaine. *Id.* at 14, 16, 17. Thereafter, Thomas returned to his vehicle. *Id.* at 17.

¶ 11 As the troopers pulled away from the scene, they radioed a marked patrol vehicle, described the transaction, and provided a description of Blessitt. *Id.* at 18. Thomas then returned to the scene, after the arrival of the patrol vehicle. *Id.* When Blessitt was taken into custody, he did not have the marked $20 bill on his person. *Id.* at 19–20. On cross-examination, defense counsel asked Thomas the following questions regarding the fact that Blessitt did not have the marked $20 bill on his person at the time of his arrest:

> [Defense counsel]: When you catch the person who sold you the dope, [do] they usually have the marked bill on them?
>
> [Thomas]: Sometimes.
>
> Q. Most times?
>
> A. Sometimes, yeah.
>
> Q. Most times they have that marked bill?
>
> A. Sometimes, yes. Sometimes they don't.

*Id.* at 29. On redirect examination, the prosecutor asked Thomas his opinion as to what happened to the marked $20 bill, to which Thomas replied that the money was "handed off to another individual." *Id.* at 56.

¶ 12 Based on the foregoing, we cannot conclude that the trial court abused its discretion in permitting Thomas to give his opinion regarding what happened to the marked $20 bill. Thomas's testimony was limited to expressing an opinion that was rationally based on his perception. On this basis, we discern no abuse of discretion by the trial court in admitting Thomas's testimony.

¶ 13 In his remaining three allegations of error, Blessitt asserts ineffective assistance by his trial counsel. In *Common-*

*wealth v. Grant,* 572 Pa. 48, 813 A.2d 726, 738 (2002), the Pennsylvania Supreme Court held that, as a general rule, claims of ineffective assistance of counsel should not be raised on direct appeal. Rather, ineffectiveness claims should be raised in collateral proceedings filed pursuant to the Post Conviction Relief Act ("PCRA").[3] *Id.* at 738, 739. The Supreme Court provided the following rationale for its holding:

First, ineffectiveness claims, by their very nature, often involve claims that are not apparent on the record. Thus, appellate counsel must not only scour the existing record for any issues, but also has the additional burden of raising any extra-record claims that may exist by interviewing the client, family members, and any other people who may shed light on claims that could have been pursued before or during trial and at sentencing. Importantly, appellate counsel must perform this Herculean task in the limited amount of time that is available for filing an appeal from the judgment of sentence—30 days. Pa. R.Crim.P. 720. Further, following the rationale expressed in [*Woods v. State,* 701 N.E.2d 1208 (Ind.1998)[4]], it is not even clear if appellate counsel's duty extends to finding extra-record claims or whether appellate counsel would be ineffective for failing to uncover extra-record claims.

Second, even presuming the merit of the claim is apparent on the existing record, oftentimes, demonstrating trial counsel's ineffectiveness will involve facts that are not available on the record. For example, the prejudicial effect of trial counsel's chosen course of action is determined more accurately after the trial and appellate courts have had the opportunity to review the alleged claims of error and if necessary, correct any trial court errors. It is only after this review that the full effect of counsel's conduct can be placed in the context of the case.

Third, as multiple courts have recognized, the trial court is in the best position to review claims related to trial counsel's error in the first instance as that is the court that observed first hand counsel's allegedly deficient performance. An appellant should wait to raise claims of ineffective assistance of counsel until collateral review.

*Id.* at 737. However, the strict application of the rule announced in *Grant* is problematic in some instances, such as where the short duration of a defendant's sentence would effectively preclude his or her ability to raise ineffectiveness claims in a collateral proceeding.

¶ 14 To be eligible for relief under the PCRA, a petitioner must plead and prove, *inter alia,* that he is "currently serving a sentence of imprisonment, probation or parole for the crime." 42 Pa.C.S.A. § 9543(a)(1)(i). In some situations, a defendant's sentence may be of such short duration that the defendant would be ineligible for direct relief under the PCRA if he or she should wait to raise an ineffectiveness claim until the expiration of a direct appeal. In such cases, a strict application of *Grant* would require the defendant to choose between (a) abandoning a direct appeal in favor of pursuing ineffectiveness claims under the PCRA, or (b) pursuing a direct appeal and most likely being ineligible to assert ineffectiveness

---

**3.** 42 Pa.C.S.A. §§ 9541–9546.

**4.** The Pennsylvania Supreme Court favorably referred to the Indiana Supreme Court's holding in *Woods.* In *Woods,* the Indiana Supreme Court recognized that the role of direct appeal counsel does not include searching outside of the record for error, a search that would be required in discerning claims of ineffective assistance of trial counsel. *Woods,* 701 N.E.2d at 1222.

claims in a subsequent PCRA proceeding. We conclude that the Supreme Court's holding in *Grant* did not envision such a result.

¶ 15 In *Grant*, the Supreme Court announced its holding as a "general rule," thereby acknowledging that it may not be applicable in all situations. *Grant*, 813 A.2d at 738. The Supreme Court noted that, under the circumstances presented in *Grant*, the application of this new rule would not harm either party, "since claims of ineffectiveness can be raised in a collateral proceeding ...." *Id.* at 728. Implicitly, the Supreme Court intended that no harm should inure to the parties because of its new rule. This conclusion is further supported by the Supreme Court's statement that, "[u]nder certain circumstances, the Court may choose to create an exception to the general rule and review certain ineffectiveness claims on direct appeal." [5] *Id.* at 738 n. 14.

¶ 16 In *Commonwealth v. Salisbury*, 823 A.2d 914 (Pa.Super.2003), a panel of this Court carved out a limited exception to the general rule announced in *Grant*. Specifically, the panel held that where the short duration of an appellant's sentence would preclude her from challenging, in a collateral proceeding, her constitutional right to effective assistance of counsel, the ineffectiveness claim may be raised on direct appeal. *Id.* at 916. Subsequent panel decisions of this Court have likewise addressed ineffectiveness claims where the short duration of the appellant's sentence would preclude review of ineffectiveness claims under the PCRA. *See Commonwealth v. Dent*, 837 A.2d 571, 587 (Pa.Super.2003) (addressing an ineffectiveness claim on direct appeal where the defendant was sentenced to an immediate term of probation

concurrent with her sentence on an unrelated crime, and the probation term had expired); *Commonwealth v. Duda*, 831 A.2d 728 (Pa.Super.2003) (reviewing ineffectiveness claims on direct appeal because of the short duration of the appellant's sentence); *Commonwealth v. Salisbury*, 823 A.2d 914 (Pa.Super.2003) (recognizing an exception to the Supreme Court's holding in *Grant* where the appellant's sentence of seven days time served was too short to raise an ineffectiveness claim in PCRA petition). *But see Commonwealth v. Millward*, 830 A.2d 991 (Pa.Super.2003) (declining to apply the *Salisbury* exception where the appellant was sentenced to a 90–day prison term, plus a concurrent probation term of three years, and still had almost two years within which to litigate a PCRA petition).

■ ¶ 17 Our review of the above-cited cases discloses that they are consistent with the purpose of the rule announced by the Supreme Court in *Grant*. Accordingly, we agree with those decisions holding that, where the short duration of an appellant's sentence would preclude the defendant from challenging, in a collateral proceeding, his or her constitutional right to effective assistance of counsel, the ineffectiveness claim may be raised on direct appeal.

■ ¶ 18 In this case, however, after the trial court sentenced Blessitt to a prison term of 16 to 32 months, Blessitt was released on bond pending this appeal. *See* Trial Court Order, 4/3/02. Accordingly, at the expiration of Blessitt's direct appeal, he will have sufficient time within which to pursue any claims for relief under the PCRA. In light of *Grant*, we dismiss Blessitt's claims of ineffective assistance of

---

5. For example, the Supreme Court created one such exception in *Commonwealth v. Bomar*, 573 Pa. 426, 826 A.2d 831 (2003). In that case, the Supreme Court held that the

rule announced in *Grant* did not apply where the ineffectiveness claim was raised and developed in the trial court through post-trial motions. *Id.* at 853.

counsel without prejudice. Blessitt may present his ineffectiveness claims, along with any other claims cognizable under the PCRA, in a first PCRA petition. The PCRA court will then be able to conduct any required hearing on any properly raised claims.

¶ 19 Judgment of sentence affirmed.