**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**Jeremiah D. OSTROSKY, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 26, 2004.

Filed Jan. 4, 2005.

Michael A. Murphy, Pittsburgh, for appellant.

Robert A. Willig, Asst. Dist. Atty., and Michael W. Streily, Deputy Dist. Atty., Pittsburgh, for Com., appellee.

BEFORE: BENDER, PANELLA and POPOVICH, JJ.

OPINION BY BENDER, J.:

¶ 1 Jeremiah D. Ostrosky ("Appellant") appeals from the August 28, 2003 judgment of sentence imposed following his conviction on one count of retaliation against a witness or victim, 18 Pa.C.S. § 4953; two counts of terroristic threats, 18 Pa.C.S. § 2706; one count of disorderly conduct, 18 Pa.C.S. § 5503(a)(1–4); and two counts of harassment and stalking, 18 Pa.C.S. § 2709. We reverse the judgment of sentence with regard to the crime of retaliation against a witness or victim.

¶ 2 A factual and procedural history of this case follows. In the spring or summer of 2002, prior to the time Appellant committed the crimes in the instant case, Appellant was ordered to pay restitution to Jim and Andrea Foster (respectively, "Mr. Foster" and "Mrs. Foster") for vandalizing their truck, causing approximately $2,200 in damages. N.T. Trial, 6/16/03, at 12–13. On a later date, September 20, 2002, Appellant, who was 18 years old at the time, was present at a high school football game. Mr. and Mrs. Foster were also present at the game, since Mr. Foster did volunteer work for the marching band. Id. at 11, 25. Mr. Foster testified that, according to band rules, band members are not permitted to converse with anyone else during game time. Id. at 14. Mr. Foster recognized Appellant as Appellant approached a band member and started conversing with the band member. Id. Mr. Foster approached Appellant and explained to him that band members were not permitted to talk with him. Id. at 15. Appellant called Mr. Foster a name and made a smart remark. Id. Appellant then left the area. Id. at 16.

¶ 3 Approximately 45 minutes to 1 hour later, Appellant returned to the area and approached Mr. Foster; however, before any words were exchanged, Mr. Foster left to go to the restroom. Id. at 16–18. When Mr. Foster returned, Appellant began telling Mr. Foster that it was his fault that Appellant was arrested for the vandalism and that it was his fault that Appellant had to spend time in jail for the vandalism. Id. at 18, 22. Mr. Foster testified that Appellant threatened to take Mr. Foster's "fat ass out in the field and beat [him] up." Id. at 18. Appellant also called Mr. Foster a "fat fuck" and "was using vulgarity the whole time." Id. At first, Mr. Foster thought the situation was funny and was laughing, but, as Mrs. Foster approached the scene, Appellant said to Mr. Foster, "[y]ou ain't going to find this funny when I am slapping your wife around and ass fucking her." Id. at 19. Mr. Foster thought that his wife did not hear that comment. Id. at 20. However, after Appellant made that comment, Mr. Foster got angry and started "looking around for help." Id. People started gathering around and Mr. Foster asked someone to call the police. Id. Appellant was upset, getting louder as he continued yelling at Mr. Foster, and was "in [Mr. Foster's] face." Id. at 21. The incident ended when Mr. Foster walked away. Id. at 22. By that time, the police were arriving. Id. Mrs. Foster testified that she had observed her husband and Appellant arguing and someone told her what Appellant said about her. Id. at 36. She felt intimidated. Id.

¶ 4 Appellant took the stand in his defense, testifying to his version of the incident, which differed from Mr. Foster's version. Appellant testified that when he returned to the scene toward the end of

the game, Mr. Foster again told him to leave, to which Appellant responded that he was "on borough property and that the game was over and [he] had every right to be in the area[.]" N.T. Trial, 6/17/03, at 11. Appellant indicated that Mr. Foster said "why don't you go smash some more cars or something" upon which Appellant responded that he spent time in jail and paid restitution for the vandalism, of which he was innocent. *Id.* Appellant testified that Mr. Foster then said, "I don't need some punk ass kid blaming me for what he did wrong" and that he would "kick [Appellant's] ass." *Id.* at 12, 13. Appellant responded "if you want to kick my ass, then come do something about it" and, Appellant testified, the confrontation ended. *Id.* at 13, 14. Appellant denied that he was "in [Mr. Foster's] face" but was, rather, never closer than 10 to 15 feet from him. *Id.* at 14. He denied making the comment about Mrs. Foster. *Id.* at 35. Appellant testified that he never made any advances toward Mr. Foster but that "[i]t was merely [a] ... two to three minute verbal argument." *Id.* at 14. Appellant denied terrorizing the Fosters, but admitted that he did use some harsh language in response to Mr. Foster's abusive language. *Id.* at 18. Police arrived and arrested Appellant as Appellant was leaving the scene. *Id.* at 15, 16.

¶ 5 Following a two-day bench trial in June of 2003, the trial court found Appellant guilty of all of the crimes enumerated in the first paragraph of this opinion. The court specifically indicated that it found Appellant's testimony not credible. *Id.* at 51. On August 28, 2003, the trial court sentenced Appellant to two concurrent terms of 7 to 23 months' incarceration with permission for alternative housing and work release, to be followed by one year of probation. These sentences applied to the count charging retaliation against a witness and the terroristic threat count pertaining to Mr. Foster. No further sentence was imposed on the remaining counts. Appellant filed a post-trial motion, which the trial court denied on October 3, 2003. Appellant filed a timely notice of appeal.

¶ 6 Appellant raises the following issues in this appeal:

1. Whether the trial court erred in convicting [Appellant] of Retaliation Against Witness or Victim and in denying [Appellant's] post-sentence motion for judgment of acquittal on that charge, where the Commonwealth failed to present sufficient evidence that [Appellant] harmed another by an unlawful act, or engaged in a course of conduct or repeatedly committed acts which threaten another?

2. Whether [Appellant] was denied effective assistance of counsel where his attorney failed to inform [Appellant] of the District Attorney's offer of a plea agreement that [Appellant] would have accepted, and where the trial court failed to grant a hearing on that claim?

Appellant's brief at 4.

¶ 7 The first issue requires us to examine the sufficiency of the evidence with regard to the crime of retaliation against a witness or victim, 18 Pa.C.S. § 4953. Accordingly, we note our well-settled standard of review:

In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to see whether there is sufficient evidence to enable [the factfinder] to find every element of the crime beyond a reasonable doubt. This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links

the accused to the crime beyond a reasonable doubt. Although a conviction must be based on "more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty." *Commonwealth v. Coon*, 695 A.2d 794, 797 (Pa.Super.1997) (citations omitted). Moreover, when reviewing the sufficiency of the evidence, this Court may not substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed. *Commonwealth v. Marks*, 704 A.2d 1095, 1098 (Pa.Super.1997) (citing *Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986)). Lastly, a jury may believe all, some or none of a party's testimony. *Commonwealth v. Purcell*, 403 Pa.Super. 342, 589 A.2d 217, 221 (Pa.Super.1991).

*Commonwealth v. Davis*, 2004 PA Super 409, 30, 861 A.2d 310 (filed October 26, 2004).

¶8 The Crimes Code defines the crime of retaliation against a witness or victim as follows:

**§ 4953. Retaliation against witness, victim or party**

(a) **Offense defined.**—A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter.

18 Pa.C.S. § 4953(a) (hereinafter "retaliation statute" or "section 4953"). Appellant specifically argues that, to the extent Appellant engaged in threatening conduct toward the Fosters at the football game, such conduct was not repeated and could not be characterized as a course of threatening conduct as required by the retaliation statute. He further argues the Commonwealth failed to establish that the victims in this case suffered "harm" as contemplated by the retaliation statute. As such, Appellant claims that the facts established at trial are insufficient to sustain the conviction under the retaliation statute. To resolve Appellant's first issue, we must undertake an exercise in statutory interpretation.

¶9 Indeed, "when the judiciary is required to resolve an issue concerning the elements of a criminal offense, its task is fundamentally one of statutory interpretation, and its overriding purpose must be to ascertain and effectuate the legislative intent underlying the statute." *Commonwealth v. Booth*, 564 Pa. 228, 766 A.2d 843, 846 (2001). With regard to interpretation of criminal statutes contained in the Crimes Code, our Supreme Court has stated as follows:

[W]hen the language of a statute is clear and unambiguous, it must be given effect in accordance with its plain and common meaning. 18 Pa.C.S. § 105 (provisions of the Crimes Code must be construed "according to the fair import of their terms"); 1 Pa.C.S. § 1921(b)[.] When the meaning of a statute is plain, a court should not disregard the language of the law in the context of pursuing its spirit. 1 Pa.C.S. § 1921(b)[.] Throughout our analysis, we are guided by the precept that penal statutes are to be strictly construed in favor of the accused. 1 Pa.C.S. § 1928(b)(1)[.]

*Commonwealth v. Kelley*, 569 Pa. 179, 801 A.2d 551, 554 (2002).

¶10 First, we examine the elements of section 4953. To establish this offense, the Commonwealth had to prove that Appellant, with the requisite intent,[1] either:

---

1. *See also Commonwealth v. Blackwell*, 436 Pa.Super. 294, 647 A.2d 915, 927 (1994)

(1) **harmed another by any unlawful act** in retaliation for anything lawfully done in the capacity as a witness or victim;

**OR**

(2) either:

a. **engaged in a course of conduct which threaten** another in retaliation for anything lawfully done in the capacity of a witness or victim **OR**

b. **repeatedly committed acts which threaten** another in retaliation for anything lawfully done in the capacity of a witness or victim.

A plain reading of the statute results in the breakdown of the elements as indicated above, and the legislature's use of the disjunctive "or" reveals that there are three different ways one can violate this statute. The parties agree with this reading of the statute. *See* Appellant's reply brief at 4; Commonwealth's brief at 10.

¶ 11 The parties also seem to agree that there was no course of threatening conduct or repeated threatening acts in the instant case. Rather, the controversy in the instant case centers on interpretation of part (1) above, which indicates that the Commonwealth can establish the offense by proving *harm* to the Fosters from any unlawful act of Appellant in retaliation for their status as victims in the prior crime of vandalism perpetrated on their vehicle by Appellant. The meaning of harm as it is used in the statute, and whether the Commonwealth established harm, are the core issues in this case. Appellant argues that a single incident of verbal threats did not result in harm to the Fosters as contemplated in section 4953. We find that Appellant's argument has merit.

("The *intention to retaliate* against a witness or victim is an element of retaliation against a

¶ 12 The legislature did not define "harm" as it is used in the retaliation statute. "We construe non-technical words and phrases in statutes, which remain undefined, according to their ordinary usage." *Kelley,* 801 A.2d at 555 (citing, *inter alia,* 18 Pa.C.S. § 105 and 1 Pa.C.S. § 1903(a)). According to its dictionary definition, the word "harm" constitutes a broad range of wrongs. For example, one dictionary defines harm as, *inter alia,* physical or mental damage, mischief, hurt, disservice, an act or instance of injury, or a material and tangible detriment or loss to a person. WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1034 (1966). Black's Law Dictionary provides the following expansive definition of the word: "Injury, loss, damage; material or tangible detriment." BLACK'S LAW DICTIONARY 734 (8th ed.2004). Thus, harm can encompass a broad spectrum of physical, psychological, social, and financial injury or detriment.

¶ 13 However, because of the context in which the word "harm" is used in the retaliation statute, we question whether the legislature intended that it include any conceivable kind of injury, loss, or damage, as described in the dictionary. Since the issue raised herein cannot be resolved by merely applying the common definition of the term "harm," we must engage in further statutory interpretation. *See Commonwealth v. Lopez,* 444 Pa.Super. 206, 663 A.2d 746, 748 (1995) ("In construing a statute to determine its meaning, courts must first determine whether the issue may be resolved by reference to the express language of the statute, which is to be read according to the plain meaning of the words."). *See also Baker v. Retirement Bd. of Allegheny County,* 374 Pa. 165, 97 A.2d 231, 234 (1953) (indicating

witness[.]"). This element, however, is not at issue in the instant case.

that "words can have a variety of interpretations, depending on context, circumstance, history and juxtaposition to other words").

▇▇▇ ¶ 14 An exercise in statutory interpretation requires us to read the statute as a whole and consider the grammatical context in which the word to be interpreted is used. *See Commonwealth v. Berryman*, 437 Pa.Super. 258, 649 A.2d 961, 965 (1994) (*en banc*) (indicating that words of a statute must be considered in their grammatical context and that the sections and sentences of the whole statute comprises a composite of the statute's stated purpose). *See also* 1 Pa.C.S. § 1922(2) (indicating that the legislature intends entire statute to be effective). "The principles of statutory construction indicate that '[w]henever possible each word in a statutory provision is to be given meaning and not to be treated as surplusage.'" *Commonwealth v. Tome*, 737 A.2d 1239, 1241 (Pa.Super.1999) (citation omitted). Additionally, our rules of statutory construction provide that where the words of a statute are not explicit, we may discern legislative intent by examining, *inter alia,* "[t]he former law, if any" and the "consequences of a particular interpretation." 1 Pa.C.S. § 1921(c)(5), (6).

¶ 15 We begin our analysis by comparing the new and old versions of the retaliation statute. The current version, in effect at the time of the crimes in the instant case, again reads as follows:

**§ 4953. Retaliation against witness, victim or party**

(a) **Offense defined.**—A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter.

18 Pa.C.S. § 4953 (West Supp.2004) (effective Dec. 20, 2000). The former version of this statute, as it was originally enacted in 1980 up until the time it was amended in 2000, read as follows:

(a) **Offense defined.**—A person commits an offense if he harms another by any unlawful act in retaliation for anything lawfully done in the capacity of witness or victim.

*Id.* § 4953 (enacted Dec. 4, 1980, P.L. 1097, No. 187, § 4). The 2000 amendment to the statute obviously added the phrase "or engages in a course of conduct or repeatedly commits acts which threaten another" so that one could now violate the statute either by "harm[ing] another by any unlawful act" *or* by "engag[ing] in a course of conduct or repeatedly commit[ing] acts which threaten another," as we have described above. Since we cannot construe any language to be mere surplusage, we find that the amended language reveals the legislature's intent to further define or delineate the type of conduct prohibited by the statute. The presence of the language added by the 2000 amendment leads us to the ultimate conclusion that a single incident of verbal threats, as occurred in this case, cannot constitute "harm" to the victims, who testified only that they felt threatened by Appellant's conduct.[2] We reach this conclusion based on the following.

---

**2.** Feelings of intimidation, as testified to by Mrs. Foster, fall under the rubric of feeling threatened. *See, e.g.,* WILLIAM C. BURTON, BURTON'S LEGAL THESAURUS 512 (3d ed.1998). Similarly, Mr. Foster, although first finding the encounter funny, later felt threatened such

that he started looking around for help and told someone to call the police. In other words, there was no evidence indicating that the victims experienced anything other than the feeling of being threatened during this one, isolated incident. The fear and intimi-

¶ 16 The maxim, *expressio unius est exclusio alterius,* "establishes the inference that, where certain things are designated in a statute, 'all omissions should be understood as exclusions.' The maxim is one of longstanding application, and it is essentially an application of common sense and logic." *Commonwealth v. Charles,* 270 Pa.Super. 280, 411 A.2d 527, 530 (1979). Under application of *expressio unius est exclusio alterius,* the legislature's decision to expressly designate that repeated threats or course of threats can violate the statute, indicates that they did not intend to punish a single such incident.[3] Thus, "harm" cannot include a single instance of threats as occurred in the case presently before us. ·In other words, we doubt if the ·legislature intended to punish, under this statute, one incident of threatening conduct,· since it amended the statute to indicate that it intends to punish threatening conduct that is repeated in nature. If we strictly construe the statute, as we are required to do when interpreting criminal statutes, and if we apply the *expressio unius* maxim, we must conclude that one instance of threatening conduct is insufficient to establish the commission of this crime.

¶ 17 Although the issue presented in this case is one of first impression in Pennsylvania, we note some examples of cases involving the retaliation statute that entail conduct admittedly more severe than that demonstrated here. For example, in *Commonwealth v. Blackwell,* 436 Pa.Super. 294, 647 A.2d 915 (1994), the defendant was found guilty of retaliation when, after raping his former girlfriend, he later confronted her, demanded that she not testify against him, grabbed her arm, threatened her with a gun, and, as she tried to get away from him, he shot her three times in the head, face, and hand. *Id.* at 918. *See also Commonwealth v. Copeland,* 723 A.2d 1049, 1050 (Pa.Super.1998) (involving prosecution under retaliation statute where defendant, who was accused of theft, continued to harass victims for seven months by making repeated telephone calls, damaging property, engaging victims in a car chase and car fire, making death threats, and physically confronting victims); *Commonwealth v. Perillo,* 426 Pa.Super. 1, 626 A.2d 163, 164 (involving retaliation by blocking victim's exit from her apartment, throwing victim against mailbox, following victim to her car, spitting in victim's face, and

dation felt by the victims are, at their core, feelings that arise from being threatened. *See id.* (listing synonyms for threat and threaten including, *inter alia,* alarm, foreboding, intimidation); WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 2382 (1966) (describing words associated with "threat" such as, *inter alia,* coercion, annoyance, harassment, persecution, and defining threat as, *inter alia,* "expression of intention to inflict loss or harm on another by illegal means and esp[ecially] by means involving coercion or duress ....").

3. In *Young v. Workmen's Compensation Appeal Bd.,* 39 Pa.Cmwlth. 265, 395 A.2d 317 (1978), our Commonwealth Court examined a workmen's compensation statute providing that where any claim for compensation involves 25 weeks or less of disability, the employee may submit a certificate by a physician describing the case and the certificate shall be admitted into evidence. The Court applied the maxim, *expressio unius est exclusio alterius,* to conclude as follows: "By expressly providing that a physician's certificate is admissible in claims involving 25 weeks or less of disability, the Legislature intended to exclude such certificates in claims involving more than 25 weeks of disability." *Id.* at 318. Similarly, in the case now before us, the retaliation statutes expressly indicates that threatening conduct that is repeated in nature constitutes an offense; thus, we may infer that the legislature intended to exclude a single, isolated incident of threats, as that which occurred here. The rule of *expressio unius est exclusio alterius* applies in a manner analogous to how the Commonwealth Court applied it in *Young.*

threatening to rape victim). Although the issue of sufficiency of evidence was not present in these cases, they still provide examples of the type of conduct prosecuted under the retaliation statute. The retaliation by a single incident of verbal threats that was demonstrated in the instant case, does not rise to the level of the extremely egregious retaliation that occurred in cases like *Blackwell, Copeland,* and *Perillo.*

¶ 18 In any event, to summarize, we hold that the legislature did not intend to punish the single incident of threatening verbal conduct under the retaliation statute. The legislature expressed its intent that such conduct is punishable under the statute only when repeated in nature. Accordingly, applying our standard of review for sufficiency of the evidence questions, whereby we view all evidence in the light most favorable to the Commonwealth, we must conclude that the Commonwealth in this case did not present sufficient evidence to sustain Appellant's conviction under the retaliation statute. We must, therefore, reverse the judgment of sentence pertaining to the conviction under the retaliation statute.[4]

¶ 19 In his second issue, Appellant raises an ineffective assistance of counsel claim based on his allegation that trial counsel failed to inform him of a plea offer from the Commonwealth. We conclude that, based on the record before us and our Supreme Court's decision in *Commonwealth v. Grant,* 572 Pa. 48, 813 A.2d 726 (2002), we cannot adequately conduct appellate review on this issue at this time.

¶ 20 Judgment of sentence reversed with regard to sentence on 18 Pa.C.S. § 4953 ("Retaliation against witness, victim or party").

¶ 21 Judge POPOVICH files a Concurring and Dissenting Statement.

## CONCURRING AND DISSENTING STATEMENT BY POPOVICH, J.:

¶ 1 I disagree with the majority's decision to reverse Appellant's judgment of sentence pertaining to the conviction under the retaliation statute. Accordingly, I respectfully dissent to this holding. I agree with the majority's dismissal of Appellant's ineffective assistance of counsel claim without prejudice to raise on collateral review.

¶ 2 The majority held that the legislature did not intend to punish the single incident of threatening verbal conduct under the retaliation statute. Maj. Op., at 430–31. I disagree.

¶ 3 The crime of retaliation against a witness, victim, or party is defined as:

§ 4953. **Retaliation against witness, victim or party**

(a) Offense defined.—A person commits an offense if he harms another by any unlawful act or engages in a course of conduct or repeatedly commits acts which threaten another in retaliation for anything lawfully done in the capacity of

---

4. In *Commonwealth v. Robinson,* 817 A.2d 1153 (Pa.Super.2003), we reversed a judgment of sentence for aggravated assault and affirmed the judgment in all other respects. However, we did not need to remand for resentencing because our disposition did "not upset the court's sentencing scheme as the sentence we reverse[d] ... had been ordered to run concurrent to the sentence" imposed on the sentence we affirmed. *Id.* at 1163 n. 14. The same holds true in the instant case.

Appellant did not challenge the sentence of 7 to 23 months' incarceration to be followed by one year probation imposed on the terroristic threats conviction, which was concurrent to the sentence we are reversing on the retaliation conviction. Thus, although we are reversing the judgment of sentence on the retaliation conviction, there will be no actual change in the punishment imposed in this case.

witness, victim or a party in a civil matter.

¶ 4 I agree with the majority that the portion of § 4953(a) applicable in the present case can be stated as: A person commits an offense if he harms another by any unlawful act in retaliation for anything lawfully done in the capacity as witness or a victim. Clearly, Appellant committed unlawful acts, his convictions for terroristic threats, disorderly conduct, and harassment support this contention, and Appellant committed these acts in retaliation for Mr. Foster's status as victim in Appellant's prior crime of vandalism of their vehicle, as evidenced by Appellant telling Mr. Foster that it was his fault that Appellant went to jail for vandalism. The final question that we must answer is whether Appellant's unlawful acts caused "harm." I believe that Appellant's acts of threatening to assault Mr. Foster physically and to assault Mrs. Foster physically and to sodomize her constituted "harm" as envisioned by the Legislature. When Appellant first threatened Mr. Foster, he thought the situation was "funny." However, as Mrs. Foster approached the two men, Appellant then told Mr. Foster, "You ain't going to find this funny when I am slapping your wife around and ass fucking her." N.T. Trial, 6/16/03, at 19. At this point, Mr. Foster started looking for help and asked for someone to call the police. *See id.*, at 20. Mrs. Foster was told what Appellant had said about her and said she then felt intimidated. *See id.*, at 36. I believe that Appellant's actions, and the Fosters' respective responses thereto, demonstrate "harm."

¶ 5 The majority found that the legislature did not envision a single threat would constitute a conviction for retaliation because the legislature amended the statute to prohibit repeated threatening conduct against witness, victim, or opposing party

in civil litigation, and, therefore, a single threat would not be punishable. I disagree from the majority's rationale.

¶ 6 Specifically, I believe that a single threat may be punishable if the Commonwealth can establish "harm," as was in this instance. To rule out a single threat from retaliation defies logic. For example, if, on one occasion, a person threatens a witness because the witness testified against him and this threat causes psychological harm requiring medical treatment to the witness, I believe that the elements of retaliation have been met. As I read the statute, the legislature's amendments added actions that did not involve "harm" to the retaliation statute, namely, course of conduct and repeated threats. A single threat may still lead to a conviction if the Commonwealth can prove harm.

¶ 7 I agree with the majority that Appellant's claim of ineffective assistance of counsel is precluded pursuant to *Commonwealth v. Grant*, 572 Pa. 48, 813 A.2d 726 (2002). The strict application of the rule in *Grant* has been relaxed in instances where the short duration of a defendant's sentence would effectively preclude collateral review. *See Commonwealth v. Salisbury*, 823 A.2d 914 (Pa.Super.2003). In this case, Appellant will have sufficient time (sentence will expire July 28, 2006, following twenty-three month maximum sentence and one-year probation) within which to pursue any claims of relief under the PCRA. *Cf. Commonwealth v. Blessitt*, 852 A.2d 1215 (Pa.Super.2004) (16– to 32–month sentence and defendant out-on-bond was sufficient time); *contrast Commonwealth v. Ross*, 856 A.2d 93 (Pa.Super.2004) (sentence expires in October 2004 and Superior Court disposition filed in July 2004 was not sufficient time).

¶ 8 For the foregoing reasons, I would affirm the judgment of sentence on the retaliation conviction and agree that Ap-

pellant's ineffective assistance of counsel claim must await collateral review.