J-S41006-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| BRET DAVID LEITZEL | : | |
| | : | |
| Appellant | : | No. 934 MDA 2022 |

Appeal from the Judgment of Sentence Entered May 26, 2022
In the Court of Common Pleas of Union County at No(s):  CP-60-CR-
0000052-2021

BEFORE:   LAZARUS, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY LAZARUS, J.:                     **FILED: MARCH 7, 2023**

Bret David Leitzel appeals from the judgment of sentence, entered in the Court of Common Pleas of Union County, after a jury convicted him of retaliation against a victim, witness or party.[1]  After review, we affirm.

On November 17, 2020, a protection from abuse order (PFA order) was entered on behalf of J.L. against Leitzel.  J.L. testified that Leitzel had previously refused to sign an agreement permitting the parties to have contact to discuss their child and their dog.  N.T. Jury Trial, 1/28/22, at 54.  The final PFA order hearing was scheduled for February 11, 2021.  By way of background, Leitzel and J.L. have periodically been in a relationship since they were 17 years old and have a 16-year-old son.  **Id.** at 35, 47, 52.

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. § 4953(a).

On February 8, 2021,[2] Leitzel texted J.L. asking if he could pick his mail up from her house.  *Id.* at 36, 40.  J.L. then called Leitzel to tell him that their dog may need to be put down.  *Id.* at 37.  J.L. testified that during this phone-call, Leitzel "told [J.L. she] shouldn't go [to the final PFA order hearing] because [she] was going to get arrested for having contact with [Leitzel]" and that "if [she did go] it's going to fall back on [her]."  *Id.* at 38.  J.L. also testified that Leitzel stated that if she went to the final PFA order hearing "he [was] going to destroy [her] life."  *Id.* at 45.  According to J.L., this meant "harassment, never[-]ending harassment and threats, harassing our child[]."  *Id.* at 38.  J.L. also testified that during the phone call, Letziel stated that "[if] I were you, I wouldn't show up," referring to the final PFA order hearing.  *Id.* at 52.  The 17-minute phone call ended when J.L. hung up on Leitzel.  *Id.* at 38, 49.

After the phone call ended, Leitzel immediately began sending text messages to J.L.  The text messages from Leitzel included statements such as the following:

> Haha you're a joke.  It's fine for you to disrespect everybody.  I didn't even disrespect you.
>
> ***
>
> Grow the f—k up.
>
> ***

---

[2] The parties stipulated that on February 8, 2021, there was a valid temporary PFA order in effect, which provided that Leitzel was prohibited from contacting J.L.

Haha you don't want me to proceed.  Let your pride f—k your life up like always.

\*\*\*

Grow the [f—k] up . . . .  If you can't listen to anything I say then that's disrespecting me.  All you've done is lied this whole time about everything.

\* \* \*

You wanna [f—k] sh[i]t up for me.  I'm sick of letting you get away with everything.  You're such an ignorant self[-]centered person.

\* \* \*

That makes me want to destroy you without remorse like you did me.

*Id.* at 39, 41, 42, 45; Commonwealth Exhibit 2.5, 2.12, 2.22.

While Leitzel was texting J.L, she called the police to file a PFA order violation.  Officer Jackson Stroup, of the Mifflinburg Police Department, testified that upon arriving at J.L.'s place of employment, "[J.L.] was crying, she was emotionally upset, physically upset based off of the entire situation." *Id.* at 57.  While Officer Stroup took pictures of the aforementioned text messages, Leitzel proceeded to text J.L.  *See id.* (Officer Stroup testifying "While I was taking pictures, the phone just kept blowing up with more and more messages").

At trial, Officer Stroup read a text from Leitzel into the record, which stated, *inter alia*,

We can play.  I'm done being nice to you and trying to get along. [] You're such a terrible person.  Everything you've done and the way you continue to act will bite you in the a--.  I was trying to be nice and civil but obviously you can't [be]. []  Why are you so evil?  []  All your fake police calls and [PFAs] and abuse towards me doesn't matter?  []  I don't know how you live that way?! [] Trust me, I can play these games and everything you've done and the nasty spiteful selfish inconsiderate person you are will be

- 3 -

brought to light. [] You deserve everything you'll get at this hearing. [] They'll change their thoughts about you and you'll get what you deserve.

*Id.* at 59-62.

J.L. testified that the text messages Letizel sent and statements he made during the phone call on February 8, 2021 made her feel "threatened." *Id.* at 38. Additionally, due to these statements and past physical altercations, J.L. believed Leitzel was capable of physically harming her. *Id.* at 46. J.L. believed that "[Leitzel] was going to ruin [her] life like he's told [her] lawyer and everyone else." *Id.* at 46. J.L. also testified that "[Leitzel] told their 16-year-old son[,] who has been having medical issues over all the stress[,] that he won't have a mom and that [she] would be put in jail after today."[3] *Id.* at 52.

On March 21, 2021, Leitzel was charged with terroristic threats[4] and retaliation against a victim, witness, or party. Leitzel proceeded to jury trial on January 28, 2022, after which he was found guilty of retaliation against a victim, witness or party. The trial court deferred sentencing pending a pre-sentence investigation report. On May 26, 2022, Leitzel was sentenced to an aggregate term of 12 to 24 months' incarceration. Leitzel filed a timely motion for judgment of acquittal, that was denied. This timely appeal followed. Both

---

[3] "Today" refers to the jury trial regarding his retaliation charge.

[4] The jury found Leitzel not guilty of terroristic threats.

Leitzel and the trial court have complied with Pa.R.A.P. 1925. Leitzel raises a single issue for our review:

> [Whether t]he [trial court] erred in finding [Leitzel] guilty of the charge of [i]ntimidation of a [w]itness[, victim or party,] as the evidence was insufficient to show that [Leitzel] communicated any threat of physical harm towards the victim[,] and the trial court erred in denying the [m]otion for [j]udgment of [a]cquittal of the same.

Appellant's Brief, at 7.

Leitzel contends that the evidence is insufficient to support his conviction of retaliation against a victim or witness or party. He argues that his conduct amounted to "one incident of verbal dialogue." Appellant's Brief, at 13. To support his claim, Leitzel relies on our Supreme Court's decision in **Commonwealth v. Ostrovksy**, 909 A.2d 1224 (Pa. 2006) (**Ostrovsky II**), affirming **Commonwealth v. Ostrovsky**, 866 A.2d 423 (Pa. Super. 2005) (**Ostrovksy I**).

This Court's review of sufficiency claims is well-settled:

> When reviewing challenges to the sufficiency of the evidence, [this Court] evaluates the record in the light [most] favorable to the Commonwealth as verdict winner, giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element beyond a reasonable doubt. However, the Commonwealth need not establish guilt to a mathematical certainty, and it may sustain its burden by means of wholly circumstantial evidence. In addition, the court may not substitute its judgment for that of the fact finder, and where the record contains support for the convictions, they may not be disturbed. Lastly, the finder of fact is free to believe some, all, or none of the evidence presented.

*Commonwealth v. Smith*, 146 A.3d 257, 261-62 (Pa. Super. 2016) (quotations and citations omitted).

Section 4953 of the Crimes Code provides that "[a] person commits [the] offense [of retaliation] if he[: (1)] harms another by any unlawful act[;] **or** [(2)] engages in a course of conduct[;] **or** [(3)] repeatedly commits acts, which threatened another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter." 18 Pa.C.S.A. § 4953(a) (emphasis added). Assuming an intent to retaliate, the Commonwealth can sustain its burden by demonstrating facts to support any one of the aforementioned clauses. *Ostrovsky II*, at 1227.

In *Ostrovksy II*, the defendant was previously charged with vandalizing the victim's truck, ordered to pay approximately $2,000 in damages and subsequently shouted indecencies at the victim during a high school football game. *Id.* at 1226. In finding that the defendant's conduct was not sufficient to convict him under the *first clause* of the retaliation statute, our Supreme Court determined that although the defendant made multiple statements to the victim, the victim believed them to be "funny" and only *one statement* caused "concern" and "intimidation." *Id.*; *see id.* at 1229 ("[The defendant's] conduct represented a single instance of verbal threat"). The Supreme Court added that "[although] the Commonwealth notes [] it could be argued that [the defendant's] behavior constituted a course of conduct in that several events occurred over a period of time, it did not charge [the defendant] under such a theory." *Id.* at 1230 n.8.

- 6 -

Here, the trial court found Leitzel guilty of retaliation under both the second and third clause of the retaliation statute—engaging in course of conduct and repeatedly committing acts which threatened another in retaliation for anything lawfully done in the capacity of witness, victim or a party in a civil matter. The court ultimately concluded that:

> This case is clearly distinguishable from the **Ostrosky** case where the facts here are replete with [examples of Leitzel] **engaging in a course of conduct or repeated acts** through his multiple texts and a 17-minute phone call to J.L. Leitzel's threat to [J.L.] was demonstrated through [her] physical distress at the time of the incident and her testimony that she felt Leitzel was making a threat of harm towards her if she testified at the final PFA hearing.
>
> ***
>
> The contents and timing of Leitzel's call and text messages, together with the circumstances surrounding them, were sufficient for the jury to infer that Leitzel intended to retaliate against J.L. to prevent her from testifying at the final PFA hearing.

Trial Court Opinion, 8/25/22, at 4 (unpaginated) (emphasis added). Thus, where the **Ostrovsky II** Court determined that the defendant was not guilty of retaliation under the first clause of the retaliation statute, Leitzel's argument is inapposite.

Instantly, Leitzel's intent to retaliate is clear where, while on the phone with J.L., three days prior to the final PFA hearing, he told her, "If I were you, I wouldn't show up." *Id.* at 52. Additionally, J.L. explicitly testified that Leitzel's text messages and statements he made during the phone call made her feel "threatened." *Id.* at 38; *see id.* at 57 (Officer Stroup testifying when he arrived to document PFA order violation, J.L. was in emotional distress).

Moreover, due to these messages and previous physical altercations between the parties, J.L. believed that Leitzel was capable of physically assaulting her. *Id.* at 46.

Further, Leitzel's course of conduct or repeated acts is demonstrated by the 17-minute phone call, during which Letizel made at least four threatening comments, and which was followed by an immediate inundation of harrowing text messages after J.L. hung up. *Id.* at 39, 41, 42, 45; Commonwealth Exhibit 2.5, 2.12, 2.22. Leitzel also made statements to the party's 16-year-old son, threating J.L.'s arrest if she testified at trial for this retaliation charge and repeatedly told J.L.'s "lawyer and everyone else" that Leitzel was going to "ruin [J.L.'s] life." *Id.* at 46, 52. Leitzel's conduct is not limited to one single threatening incident, but rather represents a series of repeated threatening statements.

In light of the foregoing, the evidence was sufficient for a jury to infer that Leitzel intended to retaliate against J.L in order to prevent her from testifying at the final PFA hearing. *Smith*, *supra*. Accordingly, we affirm Leitzel's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/07/2023