J-S41010-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| LUIS MANUEL VELEZ-MERCADO, | |
| Appellant | No. 1515 MDA 2014 |

Appeal from the PCRA Order entered August 14, 2014,
in the Court of Common Pleas of Lancaster County,
Criminal Division, at No(s): CP-36-CR-0000910-2010

BEFORE:  ALLEN, LAZARUS, and PLATT*, JJ.

MEMORANDUM BY ALLEN, J.:                           **FILED JUNE 26, 2015**

Luis Manuel Velez-Mercado ("Appellant") appeals from the order

denying his petition for relief under the Post-Conviction Relief Act ("PCRA"),

42 Pa.C.S.A. sections 9541-46.  We affirm.

The PCRA court summarized the pertinent facts as follows:

> On the early morning of December 31, 2009, at
> approximately 2:00 a.m., a red Ford Ranger pickup truck
> was idling across the street from Vicky's Bar, located at
> 701 South Prince Street in the City of Lancaster.  Two
> employees were standing on the front porch of the bar
> preparing to close the bar for the night:  Jonathan Miller,
> the bar's manager, and Victor Ortiz, the bar's
> bouncer/doorman.  When the driver's side window of the
> truck came down, both employees immediately recognized
> the driver as a former employee by the nickname of
> "Flaco."  [Miller identified Appellant at trial as "Flaco."]
> [Appellant] had been terminated from his employment as
> a DJ for the bar approximately three to four weeks earlier.

*Retired Senior Judge assigned to the Superior Court.

A week or two after he lost his job, [Appellant] had been in Vicky's Bar and threatened a bouncer. He was warned by Miller not to come back to the bar. Nonetheless, [Appellant] tried several times to enter the bar and was refused service, which made him "very angry."

While sitting in the truck across the street, [Appellant] brandished a small black handgun and fired "about five or six shots" from the driver's side window towards the bar and the area where Miller and Ortiz were standing. Miller watched the truck take off and attempted to read the [license] plate. He believed the first three letters to be "YXX" and gave the 911 operator a description of the vehicle, as well as the partial license plate when he called to report the shooting.

[Appellant] went around the block and then returned a second time. This time both windows in the pickup truck were down and Ortiz and Miller were able to see a passenger in the truck. The truck drove by Vicky's Bar slowly but no further shots were fired. After this second drive-by, Amarillis Perez, Ortiz's girlfriend, arrived at the bar to pick up Ortiz, and Ortiz entered her vehicle which was stopped on the right-hand side of the street, opposite the bar.

The pickup truck then returned to Vicky's bar a third time. This time, the passenger, whom Miller and Ortiz recognized as "Alex," a friend of [Appellant's] who often patronized the bar, had climbed out of the truck and was sitting on the windowsill of the passenger's side door facing the bar. Alex then brandished a black handgun and fired "[p]robably five or six" shots over the roof of the truck towards the porch where Miller was still standing.

During this whole episode, Miller was on the telephone with the 911 dispatcher. Within 30 to 60 seconds of the third drive-by, police arrived on the scene. Having received a description of the vehicle and a partial plate, Officers J. David Williams and Jessica Higgins with the Lancaster City Bureau of Police were able to identify the suspect vehicle in the area of Queens and Conestoga Streets, just blocks from Vicky's Bar. Despite activated sirens and overhead flashers, the suspect vehicle did not stop and the police pursued the vehicle for several blocks

through the City. Eventually, the suspect vehicle did stop on South Queen Street near Howard Avenue and the two individuals were apprehended. The suspect vehicle was a maroon 1993 Ford Ranger truck, bearing Pennsylvania plate "YXX 1049." The two individuals inside the truck were identified as Francis Alexcis Cruz-Rivera and [Appellant].

Officer Justin Waynick, of the Lancaster City Bureau of Police, received the dispatch from county radio advising that a former employee of Vicky's Bar had driven by and fired shots at the bar. He was the initial responding officer at the scene and took a statement from Jonathan Miller. Miller confirmed for the officer the information given to the 911 dispatcher regarding the color, make and model of the pickup truck, as well as the names of the individuals involved in the shooting. Officer Waynick transported Miller to the area where the [traffic] stop occurred. There, he positively identified the vehicle and the driver and the passenger as the two who drove by Vicky's bar and fired the gunshots at him and Ortiz while they stood on the bar's porch.

After confiscating the vehicle driven by [Appellant], Officer Williams observed, in plain view on the passenger's seat, a round of ammunition. Officer Williams later "noticed what appeared to be damage from a bullet to the rain guard" over the driver's side window.

Pursuant to a search warrant, Detective James V. Fatta with the Lancaster City Bureau of Police conducted a search of the Ford pickup truck. He observed what appeared to him to be a bullet hole in the driver's side door rain guard. The damage indicated that the bullet had been fired from inside the vehicle. An interior search of the vehicle revealed a .38 caliber bullet on the passenger seat. This bullet is of the type used in a revolver and not a semiautomatic handgun. Spent casings are not discharged from a revolver as they are with a semiautomatic, which explained why no shell casings were found at the scene of the shooting.

As part of his investigation, Detective Fatta reviewed the video footage from the Lancaster Safety Coalition video camera mounted at the intersection of Prince and

> Seymour Streets, which is diagonal from Vicky's Bar. The footage showed a red Ford Ranger pickup truck at the intersection at 2:07 a.m., 2:08 a.m., and 2:09 a.m.

PCRA Court Opinion, 8/14/14, at 13-17 (citations and footnote omitted).

At the conclusion of trial on December 2, 2010, a jury convicted Appellant of two counts each of aggravated assault, recklessly endangering another person, and criminal conspiracy. On February 18, 2011, the trial court imposed an aggregate sentence of six to twelve years of imprisonment. The trial court denied Appellant's timely-filed post-sentence motion on April 15, 2011. Appellant filed a timely *pro se* appeal to this Court. On September 16, 2011, we entered an order directing the trial court to conduct a ***Grazier***[1] hearing regarding Appellant's request to proceed *pro se*. Following a hearing on October 5, 2011, the trial court entered an order determining that Appellant did not wish to waive his right to counsel. Therefore, previously appointed counsel pursued Appellant's appeal.

In the interim, on September 6, 2011, Appellant filed a *pro se* PCRA petition, which the PCRA court held in abeyance pending resolution of Appellant's appeal to this Court. In an unpublished memorandum filed on May 23, 2012, we concluded that the trial court improperly sentenced Appellant and therefore vacated one concurrent six-to-twelve year term of imprisonment imposed on one conspiracy count. ***See Commonwealth v.***

---

[1] ***Commonwealth v. Grazier***, 713 A.2d 81 (Pa. 1998).

***Velez-Mercado***, 50 A.3d 249 (Pa. Super. 2012). In all other respects, we affirmed Appellant's judgment of sentence. ***Id.*** Although Appellant initially filed a petition for allowance of appeal to our Supreme Court, he subsequently discontinued it on September 15, 2012, in favor of pursuing his previously filed PCRA petition.

Following the grant of multiple continuances at the request of Appellant's privately-retained counsel, the PCRA court held an evidentiary hearing on September 18, 2013, and again on May 30, 2014. By Order entered August 14, 2014, the PCRA court denied Appellant's PCRA petition. This timely appeal followed. Both Appellant and the PCRA court have complied with Pa.R.A.P. 1925.

Appellant raises the following issue:

> I. Whether trial counsel was ineffective by failing to object to opinion testimony, equivalent to expert testimony, by law enforcement officers that damage to a rain guard was caused by the firing of a bullet from inside the vehicle Appellant was driving.

Appellant's Brief at 4.

In reviewing the propriety of an order granting or denying PCRA relief, an appellate court is limited to ascertaining whether the record supports the determination of the PCRA court and whether the ruling is free of legal error. ***Commonwealth v. Johnson***, 966 A.2d 523, 532 (Pa. 2009). We pay great deference to the findings of the PCRA court, "but its legal determinations are subject to our plenary review." ***Id.*** Moreover, to be entitled to relief under

the PCRA, the petitioner must plead and prove by a preponderance of the evidence that the conviction or sentence arose from one or more of the errors enumerated in section 9543(a)(2) of the PCRA. One such error involves the ineffectiveness of counsel.

To obtain relief under the PCRA premised on a claim that counsel was ineffective, a petitioner must establish by a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. *Johnson*, 966 A.2d at 532. "Generally, counsel's performance is presumed to be constitutionally adequate, and counsel will only be deemed ineffective upon a sufficient showing by the petitioner." *Id.* This requires the petitioner to demonstrate that: (1) the underlying claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) petitioner was prejudiced by counsel's act or omission. *Id.* at 533. A finding of "prejudice" requires the petitioner to show "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* Counsel cannot be deemed ineffective for failing to pursue a meritless claim. *Commonwealth v. Loner*, 836 A.2d 125, 132 (Pa. Super. 2003) (*en banc*).

Appellant's claim of ineffectiveness involves the testimony presented by Officer Williams and Detective Fatta regarding their observation of damage to the rain guard of the Ford pickup truck. According to Appellant:

Testimony relating to the damage caused by a bullet fell outside the scope of Pennsylvania Rule of Evidence 701, Opinion Testimony by Lay Witnesses, and would require expert testimony under Rule 702 of the Pennsylvania Rules of Evidence, as testimony regarding ballistics is a subject matter relating to a science or occupation beyond that possessed by a lay person [sic]. Trial counsel had no reasonable basis for failing to object to the inadmissible opinion testimony and Appellant was prejudiced by its admission.

Appellant's Brief at 13.

The PCRA court concluded that Appellant's claim of trial counsel's ineffectiveness lacked merit, and that Appellant could not establish the requisite prejudice. It explained:

At trial, Officer Williams testified that after transporting the truck used in the drive-by shootings to the police station to be searched, he "noticed *what appeared to be* damage from a bullet to the rain guard" on the vehicle. He noted that he believed the damage to the rain guard might have been caused "possibly by a bullet or a fragment of some kind" because "the damage . . . had . . . almost a circular shape to it, and the cracks . . . expanded out." Officer Williams explained that he did not do any further examination of the truck but rather informed the officers who would be searching the vehicle of the observed damage to the rain guard. [Appellant] claims trial counsel was ineffective for failing to object to Officer Williams' "expert opinion." [Trial counsel], however, did not concede that such testimony was, in fact, expert evidence.

This Court did not qualify Officer Williams under Pa.R.E. 702 as an expert witness in the field of ballistics. Consequently, the admissibility of his opinion testimony was governed by Rule 701. Pursuant to Rule 701, a lay witness may offer "testimony in the form of opinions or inferences," provided that the lay witness' opinion or inference testimony (1) rests on the perception of the witness, (2) helps establish "a clear understanding of the witness' testimony or the determination of a fact in issue,"

and (3) is "not based in scientific, technical, or other specialized knowledge within the scope of Rule 702." Pa.R.E. 701. *See Commonwealth v. Blessitt*, 852 A.2d 1215, 1218 (Pa. Super. 2004); *Commonwealth v. Spencer*, 432 Pa. Super. 631, 638-39, 639 A.2d 820, 824 (1994). The admission of opinion testimony is within the trial court's discretion. *See Lewis v. Mellor*, 259 Pa. Super. 509, 393 A.2d 941 (1978) (discussing court's discretion to admit lay opinion).

In this case, there was no abuse of discretion in the admission under Rule 701 of this officer's lay opinion testimony concerning the potential appearance of a bullet hole on the rain guard of a vehicle he observed. Officer Williams' testimony was limited to an expression of his lay opinion which (1) was based solely on his visual observations of the physical evidence, (2) had relevance toward a material fact, the shootings, and (3) did not demand "scientific, technical or other specialized knowledge." He performed no examination of the rain guard but rather simply informed those who would be examining the evidence of his limited observations. On this basis, the testimony was properly admissible and trial counsel's failure to object did not constitute ineffective assistance of counsel.

Pursuant to a search warrant, Detective Fatta conducted the actual search of the pickup truck. He observed a shattered section of the driver's door rain guard which "appeared as though . . . it was shot" with a "bullet or projectile." Detective Fatta testified that the damage indicated that the bullet or projectile had been fired from inside the truck.

\*\*\*

The record here establishes that the Commonwealth did not proffer Detective Fatta as an expert as he was not identified as such, nor was he qualified as an expert witness through the appropriate *voir dire*. Apparently, [trial counsel] and counsel for the co-defendant understood that Detective Fatta was not being presented as an expert witness, as well. The mere fact that a witness is a law enforcement officer does not automatically transform his testimony into expert testimony. *See*

*Prince v. State*, 216 Md. App. 178, 201, 85 A.3d 334, 348 (2014).

[Appellant's] argument that Detective Fatta's testimony could not be lay opinion evidence because "a determination that the rain guard was damaged by a bullet fired from within the car required at least expertise in ballistics," is based upon a faulty premise. It was unnecessary for Detective Fatta to be qualified as an expert in order to explain the presence of the bullet hole and the direction of its entrance and exit. *See*, *for example*, *People v. Caldwell*, 4 P.3d 663, 668 (Colo. App. 2001) (police officer who does nothing more than *observe* the appearance and location of two bullet holes, and the paths of the bullets by placing trajectory rods (in the same manner as any layman could) need not qualify as an expert to describe that process); *Prince v. State*, 216 Md. App. at 202-03, 85 A[.]3d at 348-49 (police officer's testimony about suspected bullet holes in victim's car and bullet trajectory within scope of permissible lay testimony); *People v. Oliver*, 170 Mich. App. 38, 49-51, 427 [N.W.2d] 898 (1988), *modified in part on other grounds*[,] 433 Mich. 862 (1989) (finding no abuse of discretion in the admission under MRE 701 of two police officers' lay opinion testimony concerning the potential appearance of bullet holes on a car they examined). Anyone who saw the hole in the rain guard and knew the circumstances of the drive-by shootings could have given such an opinion. In fact, the jurors in this case viewed the actual rain guard with the hole and were able to come to their own conclusions. It simply did not require a scientific basis to say that the opening in the rain guard appeared to be a bullet hole and that the bullet appeared to have entered one way and exited another because of the "outward cone shape" of the plastic. The witness who merely draws conclusions from everyday reasoning processes is not testifying as an expert. Pa.R.E. 701.

Detective Fatta testified that he was familiar with firearms, handguns and bullets from his experience as a police [officer], as a serviceman, and as a hunter. From this experience, he was able to identify a "bullet hole marking" on the rain guard. He conducted no experiments, made no attempts at reconstruction, and was not conveying information that required a specialized or

scientific knowledge to understand. He merely testified as to his perception of the bullet hole that he personally observed in the rain guard. He inspected the vehicle while performing his duties, and testified as to the appearance of the bullet hole, and as to the direction he believed as a layman, the bullet traveled. His testimony was intended to assist the jury in determining the bullet hole's significance. Thus, this lay opinion testimony was properly admissible. Simply because the evidence was "powerful" and "corroborating" of Mr. Miller's testimony does not establish that trial counsel should have objected to it as [improper] expert opinion testimony or that the Court would have sustained the objection.

Further, there also was no prejudice here to [Appellant]. The fact the PCRA counsel could not obtain an expert report that disputed the lay opinions of Detective Fatta with respect to the rain guard proves that there was no prejudice to [Appellant's] case by the admission of this evidence.

PCRA Court Opinion, 8/14/14, at 29-34 (citations to record and footnotes omitted).

Our review of the record supports the PCRA court's well-reasoned discussion and conclusions. *See*, *e.g.*, *Commonwealth v. Buterbaugh*, 91 A.3d 1247, 1262 (Pa. Super. 2014) (affirming admissibility of lay witness opinion testimony that was based on witness's observations and perceptions). As noted by the PCRA court, although Appellant was afforded the opportunity to inspect the rain guard and retain a ballistic expert, he decided to present no pertinent testimony at the evidentiary hearing. *See* PCRA Court Opinion, 8/14/14, at at 10. In rejecting Appellant's claim that trial counsel was ineffective for failing to obtain the services of a ballistics expert – an issue not raised on appeal – the PCRA court noted that trial

counsel did not retain a ballistics expert because "it was obvious to any non-expert that the damage to the rain guard was caused by a bullet from inside the truck, and an expert report would have served only to substantiate the Commonwealth's position." *Id.* at 27.

Appellant's claims to the contrary are unavailing. His attempt to factually distinguish the decisions from our sister states is unpersuasive. *See* Appellant's Brief at 16-18. Moreover, our review of the record refutes Appellant's claim of prejudice: "Here, but for the admission of the opinion testimony by the law enforcement officers as to the cause of a hole in the rain guard, there would be virtually no other corroborative evidence of the Commonwealth's only complaining witness in this case, Mr. Miller." Appellant's Brief at 19. As explained by the Commonwealth, in making this argument, Appellant ignores the ample evidence corroborating Miller's version of the incident, including: 1) Appellant and his co-defendant were found in a vehicle that matched Miller's description within minutes of the shooting and near the scene; 2) The vehicle's license plate matched the partial identification Miller gave to the 911 dispatcher; 3) the suspected vehicle appeared on video surveillance three times as described by Miller, and 4) when Miller was taken to the scene of the traffic stop, he identified Appellant and his co-defendant as the shooters. *See* The Commonwealth's Brief at 27.

In sum, our review of the record supports the PCRA court's conclusion that Appellant failed to establish his singular claim of trial counsel's

ineffectiveness. We therefore affirm the PCRA court's order denying Appellant post-conviction relief.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/26/2015